**ROBIN CONSTRUCTION COMPANY, a Corporation of New Jersey, Richard D. Masia and Judith Masia, Appellants,**

v.

**UNITED STATES of America.**

**No. 14846.**

United States Court of Appeals Third Circuit.

Argued Dec. 10, 1964.

Decided May 14, 1965.

**611**

---

Kenneth R. Stein, Stein & Stein, Newark, N. J., for appellant.

David L. Rose, Dept. of Justice, Appellate Section, Civil Division, Washington, D. C. (John W. Douglas, Asst. Atty. Gen., David N. Satz, Jr., U. S. Atty., Morton Hollander, Attys., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before GANEY, SMITH and FREEDMAN, Circuit Judges.

FREEDMAN, Circuit Judge.

This is an appeal from a summary judgment entered in favor of the defendant under Rule 56.

Plaintiffs, the owners of a house and tract of land in Summit, New Jersey, sued the United States under the Federal Tort Claims Act, 28 U.S.C. § 1346(b). Their complaint alleged that "agents, servants or employees of the United States acting within the scope of their office or employment" entered and trespassed upon plaintiffs' property on October 1, 1961, and destroyed and damaged trees and other growths on it. The answer denied the allegations of the complaint. Plaintiffs then resorted to interrogatories. One interrogatory read as follows: "State whether any agents, servants or employees of the defendant, or persons acting for or on behalf of the defendant or at the direction of the defendant, entered upon any portion of [the] premises * * * on or about October 1, 1961." To this interrogatory the defendant answered "yes". Another interrogatory inquired for the names and addresses of the persons who entered on the premises. The answer designated them as Angelo F. Paolella and Salvatore A. Zisa, and gave their military status and base in the National Guard and their

home addresses. The answers to interrogatories also stated that the two men who had entered the premises were enlisted members of the National Guard and "were present at the Nike installation for training incident to a weekend multiple drill." The purpose of the entry on the premises was stated in the answers to interrogatories to be to clear a 10 foot wide path by using a bulldozer to remove several small trees and underbrush along the outside of a fence enclosing the installation for the purpose of security.

Another interrogatory asked whether "any agents, servants or employees of the defendant, or persons acting for or on behalf of the defendant or at the direction of the defendant" were engaged in clearing the growth. The answer to this was that the two individuals named above were operating a bulldozer on the Nike installation for the purpose of constructing a parking lot. It was stated again that this "weekend operation was undertaken [by the two persons named] during their National Guard training while present at the Nike site for a weekend multiple drill" and that they were enlisted members of the National Guard. The answers to the interrogatories disclosed also that the United States had taken an easement on the portion of the plaintiffs' land adjoining the Nike site for use as a safety area around the missile station. The answers to interrogatories also stated that in addition to the two persons who were identified as having entered on the premises, a Lt. (now Captain) Tietjen, a former Pvt. Higham and a former Capt. DeLucia were also familiar with the incident.

On November 12, 1963, a year and a half after the action was commenced, the defendant moved for summary judgment. Attached to the motion was a certificate of the Department of the Army that Paolella, Zisa and Lt. Tietjen were members of the New Jersey Army National Guard, but were not in active Federal service on October 1, 1961, and that the unit to which they were assigned was not in active Federal service at that time. The motion was also accompanied by an affidavit of Tietjen that the unit was not in active Federal service at the time involved and that "As Commandant of [the] National Guard unit" he ordered Paolella and Zisa to clear the path around the missile station to which the unit was assigned.

■ The specific answer "Yes" to the general interrogatory "whether any agents, servants or employees of the defendant, or persons acting for or on behalf of the defendant or at the direction of the defendant" entered on plaintiffs' premises is not enough to raise a factual issue or to ward off summary judgment. In the first place the question was so broad that it may well have required an affirmative answer for, as appellee points out, it is at least true in one sense that all of the forces engaged in defending the United States, including the missile battalions of the National Guard are "acting * * * on behalf of" the United States. Moreover, the generality of this must yield to the more detailed answer to a further interrogatory which specified that these persons were two enlisted men, Paolella and Zisa, members of the New Jersey National Guard.

To the direct averments of the answers to interrogatories, the affidavit and the certificate which show that the men who entered on the plaintiffs' premises were members of the New Jersey National Guard who had been ordered to do so by their Commandant, and that the National Guard was not in active Federal service at the time, the plaintiffs responded by two affidavits. One was an affidavit by plaintiffs' counsel, Mr. Stein. It averred that plaintiffs were "unable to present by affidavits certain facts essential to justify plaintiffs' opposition to the motion for summary judgment. * * * The facts which the plaintiffs desire to present concern the control and direction of the federal government over, and relationship * * * to the individuals who committed the tort. * * * These facts and the various government regulations, di-

rectives and procedures which may be involved are not within the knowledge of the plaintiffs."

The other affidavit, by Mr. Masia, one of the individual plaintiffs, alleged: " * * * I was present on the premises on numerous occasions [during portions of the year 1962]. During that time I observed that Lt. Tietjen was very often on the [Nike Station] premises. * * * The nature of his presence leads me to believe that Lt. Tietjen was permanently assigned to this Nike Station and his presence there was for the purpose of taking care of the premises. * * *"

The plaintiffs in this case had the burden of proof of their claim. They have been met by answers to interrogatories and an affidavit presenting specific averments of fact which, if unchallenged, leave no genuine issue of fact and raise questions of law as the sole determinants of decision. Plaintiffs' essential reliance is on subdivision (f) of Rule 56, which provides: "Should it appear from the affidavits of a party opposing the motion that he cannot for reasons stated present by affidavit facts essential to justify his opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just." It is to be noticed that the plaintiffs have not asked for a continuance to permit them to take depositions or to engage in other forms of discovery. We are led then to the reasons which justify the statement in the affidavit of plaintiffs' counsel that the facts which they admittedly must show to succeed at trial are not within the knowledge of the plaintiffs. These facts, as we have already pointed out, relate to the identity and status of the men who entered on the plaintiffs' premises and of their superior who ordered them to do so.

The relationship between a unit of the New Jersey National Guard and the United States and the status of a member of the New Jersey National Guard are not matters within the exclusive knowledge

of the United States. They are obviously equally within the knowledge of the New Jersey National Guard and also of the individual members of the unit who are involved. In the present case once the United States revealed the identity and status of the individuals who entered on plaintiffs' premises and of the individual who ordered them to do so, and of others familiar with the facts, the secrecy which otherwise might have placed the plaintiffs at a disadvantage was gone. With this information the plaintiffs have had full opportunity to examine by pretrial depositions all of the persons whose identity has been disclosed and who are the persons upon whom the Government's case must rest. They have neither availed themselves of this opportunity nor have they indicated any desire to do so, although this is expressly granted to them by subdivision (f) upon which they rely.

In Proctor v. Sagamore Big Game Club, 265 F.2d 196 (3 Cir. 1959); we affirmed the entry of summary judgment in favor of the defendant where plaintiffs failed to challenge the defendant's affidavits except to say that they "expect to prove facts" showing the existence of an agreement which they did not produce and that they had "a well-founded supposition" to support their claim. We quoted from the opinion of Clark, J., in Engl v. Aetna Life Ins. Co., 139 F.2d 469, 473 (2 Cir. 1943), that a party who resists summary judgment cannot hold back his evidence until the time of trial: " * * * [W]e have often held that mere formal denials or general allegations which do not show the facts in detail and with precision are insufficient to prevent the award of summary judgment."

The purpose of summary judgment would be defeated if a party who has obtained by discovery and from affidavits information which he should seek to amplify or test by further discovery, merely rests on a statement of ignorance of the facts. Indeed, subdivision (f) of Rule 56, by affording an opportunity for

continuance of an application for summary judgment so as to permit affidavits to be obtained or depositions to be taken or discovery to be had, indicates that absent such effort it is idle to attempt to shrug off the facts which his adversary has presented. As has often been pointed out, one who resists summary judgment but does not contradict the operative facts in his adversary's affidavit must utilize discovery, and suspicion alone without discovery is not enough. See Schneider v. McKesson & Robbins, Incorporated, 254 F.2d 827 (2 Cir. 1958). It is true that Rule 56(f) also authorizes the court in appropriate cases to refuse to enter summary judgment where the party opposing the motion shows a legitimate basis for his inability to present by affidavit the facts essential to justify his opposition; but to take advantage of this provision he must state by affidavit the reasons for his inability to do so and these reasons must be genuine and convincing to the court rather than merely colorable. It is not enough to rest upon the uncertainty which broods over all human affairs or to pose philosophic doubts regarding the conclusiveness of evidentiary facts. In the world of speculation such doubts have an honored place, but in the daily affairs of mankind and the intensely practical business of litigation they are put aside as conjectural. In the words of Judge Learned Hand in De Luca v. Atlantic Refining Co., 176 F. 2d 421, 423 (2 Cir. 1949), cert. denied 338 U.S. 943, 70 S.Ct. 423, 94 L.Ed. 581 (1950), where doubt was sought to be cast upon records on file in the office of the Secretary of State of New York relating to the appointment of the Secretary as agent for service of process on a foreign corporation: "True, it may be too strong to say that it is impossible to conjure up any conceivable answer to them. The original may have been forged; the authentication may be false; there may be a 'surrender of authority' on file which the custodian failed to find. But if a motion for summary judgment is to have any office whatever, it is to put an end to such frivolous possibilities when they are the only answer."

The allegation in the complaint of the agency or authority of those who committed the tort was met by the factual averments of the answers to interrogatories and the defendant's affidavit. The challenge which these facts call for if there is to be a genuine issue is not met by a simple reference to the complaint. The line of decisions of this Court which in the past permitted a litigant to be sheltered against summary judgment by the allegations of his pleading, no matter how much they may have been challenged by detailed and specific affidavits or disclosures in discovery, has been overthrown by the 1963 amendments to Rule 56. One of the amendments added two new sentences at the end of subdivision (e) of Rule 56: "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If he does not so respond, summary judgment, if appropriate, shall be entered against him." The Advisory Committee in proposing the amendment declared that its purpose was to "overcome a line of cases, chiefly in the Third Circuit, which has impaired the utility of the summary judgment device. A typical case is as follows: A party supports his motion for summary judgment by affidavits or other evidentiary matter sufficient to show that there is no genuine issue as to a material fact. The adverse party, in opposing the motion, does not produce any evidentiary matter, or produces some but not enough to establish that there is a genuine issue for trial. Instead, the adverse party rests on averments of his pleadings which on their face present an issue. In this situation Third Circuit cases have taken the view that summary judgment must be denied, at least if the averments are 'well-pleaded,' and not supposititious, conclusory, or

ultimate. See Frederick Hart & Co., Inc. v. Recordgraph Corp., 169 F.2d 580 (3d Cir. 1948); United States ex rel. Kolton v. Halpern, 260 F.2d 590 (3d Cir. 1958); United States ex rel. Nobles v. Ivey Bros. Constr. Co., Inc., 191 F.Supp. 383 (D.Del.1961); Jamison v. Pennsylvania Salt Mfg. Co., 22 F.R.D. 238 (W.D. Pa.1958); Bunny Bear, Inc. v. Dennis Mitchell Industries, 139 F.Supp. 542 (E. D.Pa.1956); Levy v. Equitable Life Assur. Society, 18 F.R.D. 164 (E.D.Pa. 1955).

"The very mission of the summary judgment procedure is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial. The Third Circuit doctrine, which permits the pleadings themselves to stand in the way of granting an otherwise justified summary judgment, is incompatible with the basic purpose of the rule. See 6 Moore's Federal Practice 2069 (2d ed. 1953); 3 Barron & Holtzoff, supra, § 1235.1.

"It is hoped that the amendment will contribute to the more effective utilization of the salutary device of summary judgment."

This amendment must be made fully effective.

We hold, therefore, that Mr. Stein's affidavit did not raise any genuine factual issue and that on the present record there is no real dispute that the two men who entered on the plaintiffs' premises were members of the New Jersey National Guard acting on the orders of their Commandant, then Lt. Tietjen, and that their unit was not in active Federal service at the time.

This presents the question of law as to the liability of the United States for the torts of members of the National Guard of a State not in active Federal service. The Federal Tort Claims Act imposes liability on the United States "for injury or loss of property * * * caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred." (28 U.S.C. § 1346(b)). The statute contains a definition of "Employee of the government". It "includes officers or employees of any federal agency, members of the military or naval forces of the United States, and persons acting on behalf of a federal agency in an official capacity, temporarily or permanently in the service of the United States, whether with or without compensation. 'Acting within the scope of his office or employment', in the case of a member of the military or naval forces of the United States, means acting in line of duty." (28 U.S.C. § 2671).

The relationship between the National Guard of a State and the United States, and consequently the status of the members of a National Guard, has its foundation in Article I, § 8, of the Constitution, which provides: "The Congress shall have Power * * * to * * * provide for the common Defense and general Welfare of the United States;

* * * * * *

"To provide for calling forth the Militia to execute the Laws of the Union, suppress Insurrections and repel Invasions;

"To provide for organizing, arming, and disciplining, the Militia, and for governing such Part of them as may be employed in the Service of the United States, reserving to the States respectively, the Appointment of the Officers, and the Authority of training the Militia according to the discipline prescribed by Congress * * *."

The relationship of the National Guard to the Federal government under these constitutional provisions and the existing statutes [1] was fully reviewed in

1. See generally 32 U.S.C., National Guard; 10 U.S.C., Armed Forces. See also 5 U.S.C. § 30r(d).

our recent case of State of Maryland for the Use of Levin v. United States, 329 F.2d 722 (3 Cir. 1964), affirmed by the Supreme Court in Maryland, for the use of Levin v. United States, 85 S.Ct. 1293 (May 3, 1965). It was there pointed out that the decisions uniformly hold that military members of the National Guard not in active Federal service are employees of their respective States and not of the Federal government within the meaning of the Tort Claims Act.

■ Finally, the affidavit of Mr. Masia, asserting his belief that Lt. Tietjen may have been present at the Nike Station on many occasions for the purpose of taking care of the premises seeks to raise the question whether Tietjen's role was that of a "caretaker". Even if this were flatly asserted as a fact, however, it would be inadequate. In the first place, it has been admitted that in giving the order to his two subordinates to enter on the plaintiffs' premises Tietjen acted as *Commandant*. As pointed out in our decision in State of Maryland for the Use of Levin, supra, even when it was still arguable that a National Guard officer might be deemed an employee of the United States in his capacity as a civilian employee of the Guard, it would also be necessary to prove that he was acting within the scope of his employment in his civilian capacity at the time of the tort.[2] In that case there was a factual question whether the member of the National Guard whose negligence was being charged to the United States was acting at the time as a military or civilian member of the Guard. The Supreme Court in affirming held that it was unnecessary to deal with this factual question because in either event the guardsman was an employee of the State of Maryland and not of the United States. Mr. Justice Harlan said: " * * * [The] appointment [of military members of the National Guard] by state authorities and the immediate control exercised over them by the States make it apparent that military members of the Guard are employees of the States, and so the courts of appeals have uniformly held. * * * Civilian caretakers should not be considered to occupy a different status. Caretakers, like military members of the Guard, are also paid with federal funds and must observe federal requirements in order to maintain their positions. Although they are employed to maintain federal property, it is property for which the States are responsible, and its maintenance is for the purpose of keeping the state militia in a ready status. * * * " (p. 1298).

"In sum, we conclude that the congressional purpose in authorizing the employment by state authorities of civilian caretakers, the administrative practice of the Defense Department in treating caretakers as state employees, the consistent congressional recognition of that status, and the like supervision exercised by the States over both military and civilian personnel of the National Guard, unmistakably lead in combination to the view that civilian as well as military personnel of the Guard are to be treated for the purposes of the Tort Claims Act as employees of the States and not of the Federal Government." (p. 1300).

The undisputed facts in the present case require, as a matter of law, the conclusion that the United States is not liable for the acts of the men who entered on the plaintiffs' premises or of the Commandant who ordered them to do so. Since there is no genuine issue of fact and since on the undisputed facts the United States is not liable, summary judgment in its favor was appropriate and desirable.

The judgment will be affirmed.

2. See Judge Smith's opinion at pp. 729–730; Judge Hastie's concurring opinion at p. 732.