**SIMKINS INDUSTRIES, INC.**

v.

**FULD & COMPANY, DIVISION OF METROPOLITAN GREETINGS, INC.**

Civ. A. No. 73-2512.

United States District Court, E. D. Pennsylvania.

Feb. 12, 1975.

Samuel E. Dennis, Philadelphia, Pa., for plaintiff.

Mitchell W. Miller, Philadelphia, Pa., for defendant.

## MEMORANDUM OPINION

BECHTLE, District Judge.

This matter is before the Court on plaintiff's three motions as to the counterclaim in which it is the defendant. The first motion is for summary judgment pursuant to Rule 56; the second for judgment on the pleadings under Rule 12(c); and the third, in the alternative, for a preliminary hearing permitted by Fed.R.Civ.P. 12(d).

When defendant Fuld & Company ("Fuld") elected not to pay for merchandise which it obtained from plaintiff Simkins Industries, Inc. ("Simkins"), pursuant to a written agreement of March, 1973, the latter brought an action, *in assumpsit,* in the Common Pleas Court of Philadelphia to recover $26,-860.40 alleged to be due. The action was begun on October 9, 1973, by writ of foreign attachment.[1] Some 26 obligors of Fuld were either served with the writ or notified of its issuance. In obedience to the command of the writ, these obligors (garnishees) withheld moneys owed by them to Fuld until the attachments were dissolved.

Simkins is a Connecticut corporation registered to do business in Pennsylvania and has a local office in Philadelphia, Pennsylvania. Fuld is a New Jersey corporation with its principal place of business in Rockaway, New Jersey. The corporation, of which it is a division, was incorporated under the laws of

---

1. *See* Rules 1251 to 1279 of the Pennsylvania Rules of Civil Procedure. 12 P.S., Rules of Civ.Proc. (Supp.1975).

Massachusetts. Neither of these two foreign corporations has registered to do business in Pennsylvania. Because of the existence of diversity and the jurisdictional amount, Fuld removed the action to this Court on November 5, 1973. Before this step was taken, Fuld had dissolved the attachments by appearing and posting a bond. After the action was removed, it filed an answer to the complaint and included therein a counterclaim which set forth a cause of action sounding *in tort* for malicious prosecution and sought damages of $3 million resulting from the allegedly wrongful attachments. It also asks this Court to declare the Pennsylvania Rules of Foreign Attachment unconstitutional. Briefly, the counterclaim avers as follows: The merchandise which Simkins shipped to Fuld pursuant to the March, 1973, agreement did not conform to the specifications in the contract; that they were not of merchantable quality and not properly shipped; that Fuld informed Simkins of these matters in a letter of August 28, 1973; that Simkins was aware of the excellent financial condition enjoyed by Fuld and well knew that Fuld could afford to pay the obligation "if indeed it were due"; that Simkins could have obtained service upon Fuld by resorting to process allowed by the Pennsylvania "long-arm" statute;[2] and, that the action of Simkins "was willful, deliberate, malicious, wrongful and calculated to injure" Fuld. In short, there was an adequate available alternative method which Simkins could have pursued to compel Fuld to enter an appearance in the action and there was no need for its resorting to a writ of foreign attachment for that purpose.

█ If the Pennsylvania Foreign Attachment Rules are invalid, Fuld would not have been required to appear in the action and thereafter post a bond to dissolve the attachments. No claim is being made that Fuld waived its right to attack the constitutionality of the rules by posting the bond.[3] Nevertheless, we are bound to deny its request to proclaim them unconstitutional. Those rules have been declared to be constitutional. *See,* Lebowitz v. Forbes Leasing and Finance Corporation, 326 F.Supp. 1335 (E.D.Pa.1971), aff'd 456 F.2d 979 (3rd Cir.), cert. denied, 409 U.S. 843, 93 S.Ct. 42, 34 L.Ed.2d 82 (1972).

For some limitations on the use of foreign attachment in Pennsylvania, see Note, *Sniadach, Fuentes,* Subchapter II and Foreign Attachment, 13 Duquesne L.Rev. 1 (1974). State domestic garnishment statutes have not fared as well. In North Georgia Finishing, Inc. v. Di-Chem, Inc., 419 U.S. 601, 95 S.Ct. 719, 42 L.Ed.2d 751 (January 22, 1975), the Supreme Court declared a Georgia statute, which permitted a writ of garnishment to be issued in a pending suit without the safeguards required by the Due Process Clause, unconstitutional. Also *see,* Lynch v. Household Finance Corp., 405 U.S. 538, 92 S.Ct. 1113, 31 L.Ed.2d 424 (1972), declaring unconstitutional a Connecticut law allowing prejudgment garnishment against an individual resident of the state.

The ground for the first and second motions is that the counterclaim fails to state a claim upon which relief may be granted because (1) there has been no seizure of Fuld's property and (2) the main action brought by Simkins has not terminated in favor of Fuld.

█ At the outset, it is to be noted that Pennsylvania substantive law, including its conflict of laws rules, is to

---

2. Apparently, Fuld & Company is referring to §§ 8302 and 8307 of the Act of November 15, 1972, P.L. 1063, No. 271, 42 Pa. S. §§ 8302, 8307 (Supp.1974). This Act is "expressly intended to extend the jurisdiction of the courts of this Commonwealth to the fullest extent permitted by the Fourteenth Amendment." Proctor & Schwartz, Inc. v. Cleveland Lumber Co., 228 Pa.Super. 12, 323 A.2d 11, 13 (1974).

3. *See* Annot., 57 A.L.R.2d 1376.

be applied in determining the motions. The main action was brought to recover a debt which arose in New Jersey and the attachments took place in Pennsylvania. Were the issue to be raised in a Pennsylvania court of state-wide jurisdiction, we think that court would be in agreement with § 155 of the Restatement, Conflict of Laws (2d), and conclude that Pennsylvania law would govern the rights and liabilities of the parties for malicious prosecution.[4] The rationale for this conclusion being that the writs of foreign attachment were served in Pennsylvania, Simkins is a resident of this State, and no other state has a more dominant interest in the occurrences.[5] Pennsylvania recognizes the *tort* of malicious prosecution, though not with favor. Baird v. Aluminum Seal Company, 250 F.2d 595 (3rd Cir. 1958).

 Under Pennsylvania law, no action lies to recover damages for the prosecution of a civil suit, however unfounded, where there has been no actual interference with either the person or property of the defendant. Muldoon v. Rickey, 103 Pa. 110, 113 (1883); Gunnis, Barritt & Co. v. Cluff, 111 Pa. 512, 516, 4 A. 920 (1886); Garland v. Wilson, 289 Pa. 272, 275, 137 A. 266 (1927); Roberts v. Gibson, 214 Pa.Super. 220, 251 A.2d 799 (1969); 10 Pa.Stand. Pract.: attachment § 321 (1963). The law of attachment in Pennsylvania is governed by the law of the forum and not the law of the state where the debt arose. Caddie Homes, Inc. v. Falic, 211 Pa.

Super. 333, 235 A.2d 437 (1967); United States v. Miller, 229 F.2d 839, 841 (3rd Cir. 1956). According to Pennsylvania law, service of the writ of foreign attachment on a defendant's obligor (garnishee) is equivalent to seizure of the *res*. Selig v. Selig, 217 Pa.Super. 7, 268 A.2d 215, 217 (1970). Consequently, we think a Pennsylvania court would hold that the foreign attachments in the main action were a sufficient deprivation of Fuld's use of its property while it was in the possession of the garnishees for purpose of its maintaining an action for malicious prosecution under the counterclaim.

 If Fuld's counterclaim is interpreted as a damage claim for malicious *use* of process, then it would appear that the claim is premature and pleaded in violation of Fed.R.Civ.P. 13(a).[6] A plaintiff (a defendant in the main action), if he is to maintain an action for malicious *use* of process under Pennsylvania laws, must allege and prove, *inter alia*, that the main action has terminated favorably to him. Garland v. Wilson, *supra*; Beadle v. Friel, 320 Pa. 560, 565, 183 A. 761 (1936); Baird v. Aluminum Seal Company, *supra*, 250 F.2d at 600. Fuld cannot possibly make the required allegation in the counterclaim because the main action in which it is a defendant is still pending. It may not now, therefore, validly assert an action for malicious *use* of process. However, this conclusion does not end the matter.

---

4. In the conflict of laws field, courts of Pennsylvania, since Griffith v. United Air Lines, Inc., 416 Pa. 1, 203 A.2d 796, 806 (1964), apply the more flexible approach instead of the strict rule that the substantive law of the place of the wrong controls the outcome of the action. That approach is "to evaluate the interests of the states involved and apply the law of the state which has the most significant interests." Spector v. West Elizabeth Lumber Company, 37 F.R.D. 539, 541 (W.D.Pa.1965).

5. Comment *b* to § 155, Restatement, Conflict of Laws (2d), states: "*b. Rationale.* The rule of this Section calls for application of local law of the state where the proceeding

complained of occurred unless some other state has a more significant relationship to the occurrence and the parties with respect to the particular issue . . . ."

6. "Rule 13 refers only to claims which have 'matured' at the time they are pleaded as counterclaims. *See* Cold Metal Process Co. v. United Engineering & Foundry Co., 190 F.2d 217 (3d Cir. 1951); 3 J. Moore, Federal Practice ¶ 13.32, pp. 85–88 (2d ed. 1966), pp. 46–47 (Supp.1967). 1A. Barron & Holtzoff, Federal Practice and Procedure, § 402, p. 622 (1960) and cases cited therein." Stahl v. Ohio River Company, 424 F.2d 52, 54–55 (3rd Cir. 1970).

■ Generally, the common law recognizes the *tort* of abuse of process. *See* § 682, Restatement, Torts (1933). Of importance here is the comment to this section, which, in pertinent part, is as follows:

> "a. The gravamen of the misconduct for which liability stated in this Section is imposed is not the wrongful procurement of legal process . . .; it is the misuse of process, no matter how properly obtained, for any purpose other than that which it was designed to accomplish. Therefore, it is immaterial that . . . the proceedings terminated in favor of the person instituting or initiating them. The subsequent misuse of the process, though properly obtained, constitutes the misconduct for which the liability is imposed under the rule stated in this Section."

*See* also, Prosser, Laws of Torts (3d Ed. 1964) § 115.

■ Thus, the general law does not require that the main action be terminated before one may bring an action for the wrong committed thereafter.[7] However, the averments in the counterclaim are silent regarding a time and place, if any, that Simkins used the process subsequent to its original issuance for purposes other than that for which it was designed. Nor can such a claim be implied from a reading of the counterclaim in the light required on a motion under Rule 12(b)(6) to dismiss for failure to state a claim. Therefore, it appears that Simkins is entitled to a dismissal of the counterclaim, even though it has invoked the wrong rules of civil procedure. However, Fuld will be given an opportunity to amend the counterclaim within a reasonable time if it believes the facts warrant its doing so.

Simkins' alternative motion for a preliminary hearing will be denied at this time.

---

7. Both Pennsylvania and New Jersey permit actions for *abuse* of process. *See* Publix Drug Co. v. Breyer Ice Cream Co., 347 Pa. 346, 348, 32 A.2d 413, 415 (1943); Sachs v. Levy, 216 F.Supp. 44, 47 (E.D.Pa.1963); 29 P.L.E., Process § 8; Ash v. Cohn, 119 N.J.L. 54, 194 A. 174 (E. & A.1937); Lakufis v. Greenwood, 9 N.J. 101, 87 A.2d 23 (N.J. 1952). *See* also, Gambocz v. Apel, 102 N.J. Super. 123, 245 A.2d 507 (1968).