UNITED STATES of America ex rel.
Stephen SACKS

v.

PHILADELPHIA HEALTH MANAGE-
MENT CORPORATION, et al.

Civ. A. No. 79–0638.

United States District Court,
E. D. Pennsylvania.

Aug. 6, 1981.

Harold Cramer, and Marc S. Cornblatt, Mesirov, Gelman, Jaffe, Cramer & Jamieson, Philadelphia, Pa., for defendant, Philadelphia Health Management Corp.

**820**

David M. Donaldson and Frederic Weinstein, Asst. Attys. Gen., Commonwealth of Pennsylvania, Philadelphia, Pa., for defendant Wilbur Hobbs.

Charles E. Smith, Washington, D.C., for defendant Roy Littlejohn Associates, Inc.

Barry S. Lyons, and Helen A. Mollick, Philadelphia, Pa., for plaintiff Stephen Sacks.

## MEMORANDUM

GILES, District Judge.

The court has before it defendants' motions for summary judgment to dismiss a *qui tam* action brought by plaintiff Stephen Sacks, a private individual on behalf of both himself, as an informer, and the United States under the provisions of the Federal False Claims Act, 31 U.S.C. § 231 *et seq.* (1976) (hereinafter "False Claims Act").[1]

The complaint, in three separate counts, names as defendants the Philadelphia Health Management Corporation (hereinafter "PHMC"), a private non-profit corporation, Wilbur Hobbs (hereinafter "Hobbs"), a Deputy Secretary of the Commonwealth of Pennsylvania Department of Public Welfare (hereinafter "DPW") and Roy Littlejohn Associates (hereinafter "Littlejohn"), a management consulting firm. Jurisdiction over all three defendants is predicated upon 31 U.S.C. § 232(A) (1976).

Count I of plaintiff's complaint, which relates to PHMC, alleges that between 1974 and 1977, PHMC knowingly and intentionally exaggerated its monthly expenses under cost reimbursement contracts with the Commonwealth of Pennsylvania and thereby received illegal revenues in excess of its expenses, resulting in a surplus of approximately $768,000. The alleged contracts between PHMC and the Commonwealth were entered into pursuant to the Outreach Program portion of the "Early Periodic Screening Diagnostic and Training Program" (hereinafter "EPSDT" Program), a state medical assistance program which was partly funded by the federal government.[2]

Count II of the complaint alleges that "Littlejohn" submitted monthly claims totalling $5,200,000 for consulting services performed under contracts entered into between DPW and Littlejohn. Plaintiff further alleges that these claims were false and ficitious since Littlejohn did not perform all of the services for which it claimed payment. Count II is unrelated to the claim against PHMC.

---

1. The False Claims Act establishes a cause of action against persons making false claims upon the United States. Section 231, the liability provision of the False Claims Act basically provides that persons who submit "false, fictitious, or fraudulent" claims to the United States shall "forfeit and pay to the United States the sum of Two Thousand Dollars, and, in addition, double the amount of damages which the United States may have sustained by reason of the doing or committing such act, together with the costs of the suit." 31 U.S.C. § 231 (1976).

 Private individuals are granted standing to bring suit on behalf of the United States under the conditions enumerated in 31 U.S.C. §§ 232(B) and 232(C) (1976). Successful private plaintiffs may collect up to one fourth of the proceeds of such suit plus reasonable and necessary expenses. 31 U.S.C. § 232(E)(2) (1976).

2. Phase I administered under the EPSDT Program, known as the Outreach Program, is the subject of the cost reimbursement contracts alleged in plaintiff's complaint. Phases II/IV of the EPSDT Program, known as the Administra-

tive Phases, were the subject of negotiated "fixed fee" contracts with compensation based on a fixed fee without reference to costs or expenses incurred. (Affidavit of James McKittrick).

 In his Answer to PHMC's Motion for Summary Judgment, plaintiff asserts that his action is based on a "variety of contracts." However, the allegations of the complaint, as they relate to PHMC, and by implication to Hobbs, are expressly limited to "cost reimbursement" contracts. (Complaint ¶ 7–8). The only cost reimbursement contract specified in the complaint and in Plaintiff's Answer to PHMC's Motion for Summary Judgment is the Outreach Phase I Contract entered into pursuant to the EPSDT Program. (Complaint ¶ 7). Plaintiff's Affidavit opposing the motion for summary judgment does not specify any other contracts under which false claims were made. Thus, a fair reading of plaintiff's complaint is that PHMC made false claims under the series of cost reimbursement contracts entered into by PHMC and DPW pursuant to the Phase I Outreach Program of the EPSDT Program.

Count III of the complaint is directed towards Hobbs apparently in his official capacity and alleges that he "knew or had reason to know" of the false claims submitted by PHMC and Littlejohn and, as Deputy Secretary for the Southeastern Region of DPW, authorized and directed payment of the alleged false claims.

Defendants PHMC and Hobbs have each filed a motion for summary judgment. (Defendant Littlejohn has not moved for summary judgment but has filed a counterclaim against plaintiff for abuse of process.) In its motion for summary judgment, PHMC asserts that the undisputed evidence adduced through affidavits and financial statements audited by independent certified public accountants demonstrates that PHMC had no surplus under any of the alleged cost reimbursement contracts during the years in question. PHMC admits that it had organizational surpluses but asserts that it had sources of revenue other than the cost reimbursement contracts, such as fixed fee contracts, which are not alleged in plaintiff's complaint and which cannot form the basis of a False Claims Act action. It argues that plaintiff's theory of illegal action by PHMC turns completely upon the existence of cost reimbursement contract surplus. Since there was no such surplus, the complaint must be dismissed.

The Commonwealth joins in the reasoning of PHMC in support of its own motion for summary judgment on behalf of Hobbs sued in his official capacity. In addition, it moves to dismiss the action for lack of subject matter jurisdiction under 31 U.S.C. § 232(C) (1976).[3]

For the reasons which are set forth below, the court grants the motions for summary judgment of PHMC and Hobbs, insofar as Hobbs' motion relates to plaintiff's claims based upon Hobbs' knowledge and authorization of PHMC's alleged false claims. Further, the court dismisses the complaint without prejudice as to Littlejohn and as to Hobbs based upon his alleged knowledge and authorization of Littlejohn's alleged false claims, and dismisses Littlejohn's counterclaim against plaintiff without prejudice.

The jurisdictional basis for a *qui tam* action brought in the district court is outlined in 31 U.S.C. § 232. Subsection (C) specifically provides that the prerequisite to an action by an individual is notice of the pendency of the suit to the United States Attorney in the district involved. Notice consists of service of the complaint together with a disclosure in writing of substantially all evidence and information in the individual's possession which is material to effective prosecution of the action. The United States has sixty (60) days after service to enter the case. Only if the United States fails to enter an appearance in a timely manner or declines, in writing, to prosecute may the individual carry on the suit. Moreover, Section (C) specifically states that the court shall have no jurisdiction to proceed with any suit whenever it shall be made to appear that the informer's suit was based upon evidence or information already in the possession of the United States at the time suit was brought.[4]

---

**3.** The Commonwealth also asserts that the complaint does not specifically allege that Hobbs acted other than in his official capacity and, as such, Hobbs is a nominal party and the real defendant is the Commonwealth. In that respect, it raises as an absolute bar the defense of state immunity under the Eleventh Amendment. Lastly, it argues that plaintiff fails to plead specific intent to defraud on the part of Hobbs, an allegedly necessary element of a cause of action under the False Claims Act.

**4.** Sections 232(A), (B), and (C) read together provide:

(A) The several district courts of the United States, ... within whose jurisdictional limits the person doing or committing such act shall be found, shall wheresoever such act may have been done or committed, have full power and jurisdiction to hear, try and determine such suit.

(B) Except as hereinafter provided, such suit may be brought and carried on by any person, as well for himself as for the United States, the same shall be at the sole cost and charge of such person, and shall be in the name of the United States, but shall not be withdrawn or discontinued without the consent, in writing, of the judge of the court and the United States attorney, first filed in the case, setting forth their reasons for such consent.

Plaintiff filed his complaint in February, 1979. The complaint does not allege, and no subsequent pleading to date, over two years later, shows that the notice prerequisites of the False Claims Act have ever been satisfied by plaintiff. The docket does not show that the complaint has been served upon either the United States Attorney General or the United States Attorney for the Eastern District of Pennsylvania. Nor has plaintiff alleged that he made the requisite written disclosure to the federal government of information material to prosecution of the suit. Thus, the United States has had no opportunity under the statute to prosecute or decline to prosecute this action against either defendant.

■ Although there is no time period established in the statute within which notice must be given to the United States, it has been held that such notice must be given simultaneous or nearly simultaneous to the filing of the complaint. *United States ex rel. Shinn v. Tennessee*, 74 F.Supp. 635 (E.D.Tenn.1947) (*Qui tam* plaintiff should give notice to the United States, at the latest, within 60 days of the filing of the complaint.) Under the statutory scheme set forth above, simultaneous notice allows the United States to decide quickly whether to intervene and control the action. Moreover, it should be determined at the earliest possible time whether the informer's suit is based upon evidence or information which was in the possession of the United States prior to filing of the suit. Under the statute, until such a determination is made, this court's jurisdiction is merely conditional and it could be deprived of jurisdiction at any stage of the proceedings. *United States v. Aster*, 275 F.2d 281 (3d Cir.) *cert. denied, sub nom. Aloff v. Aster*, 364 U.S. 894, 81 S.Ct. 223, 5 L.Ed.2d 188 (1960); *United States ex rel. Vance v. Westinghouse Electric Corp.*, 363 F.Supp. 1038 (W.D.Pa.1973); *United States ex rel. Lapin v. IBM Corp.*, 490 F.Supp. 244, 245 (D.Haw., 1980).[5]

■ It is not clear from the statute that the notice requirement is a jurisdictional prerequisite. However, it is clear that notice is mandatory. Plaintiff, after nearly two years, has not satisfied the notice requirements of the statute, and has not responded in any form to Hobbs' argument that the complaint should be dismissed for lack of subject matter jurisdiction due to plaintiff's failure to comply with the notice requirements. Under the circumstances, it is entirely appropriate to dismiss plaintiff's complaint as to all three defendants. *Unit-*

---

(C) Whenever any such suit shall be brought by any person under clause (B) of this section notice of the pendency of such suit shall be given to the United States by serving upon the United States attorney for the district in which such suit shall have been brought a copy of the bill of complaint and by sending, by registered mail, or by certified mail, to the Attorney General of the United States at Washington, District of Columbia, a copy of such bill together with a disclosure in writing of substantially all evidence and information in his possession material to the effective prosecution of such suit. The United States shall have sixty days, after service as above provided, within which to enter appearance in such suit. If the United States shall fail, or decline in writing to the court, during said period of sixty days to enter any such suit, such person may carry on such suit. If the United States within said period shall enter appearance in such suit the same shall be carried on solely by the United States. In carrying on such suit the United States shall not be bound by any action taken by the person who brought it, and may proceed in all respects as if it were instituting the suit: *Provided*, That if the United States shall fail to carry on such suit with due diligence within a period of six months from the date of its appearance therein, or within such additional time as the court after notice may allow, such suit may be carried on by the person bringing the same in accordance with clause (B) of this section. The court shall have no jurisdiction to proceed with any such suit brought under clause (B) of this section or pending suit brought under this section whenever it shall be made to appear that such suit was based upon evidence or information in the possession of the United States, or any agency, officer or employee thereof, at the time such suit was brought;

. . . .

31 U.S.C. § 232 (1976).

5. The court notes that while defendants have not attempted to show that this suit is based upon information which was already in the possession of the United States, neither has plaintiff undertaken to plead that this jurisdictional element has been satisfied.

ed States ex rel. Shinn v. Tennessee, 74 F.Supp. 635 (E.D.Tenn.1947).

In any event, PHMC's and Hobbs' respective motions for summary judgment would have to be granted, and the complaint dismissed with prejudice insofar as it relates to the claims against PHMC and against Hobbs, based upon his approval of PHMC's submissions.

## A. The Standards for Summary Judgment

Under Fed.R.Civ.Pro. 56(c) summary judgment is appropriate where no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. When a party moving for summary judgment supports his motion with affidavit evidence, Fed.R.Civ.Pro. 56(e) states that the opposing party may not rest on the pleadings to defeat summary judgment. First National Bank v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968) reh. denied 393 U.S. 901, 89 S.Ct. 63, 21 L.Ed.2d 188 (1968); Bochner v. Quitman, 87 F.R.D. 621, 623 (E.D.Pa. 1980). "What Rule 56(e) does make clear is that a party cannot rest on the allegations contained in his complaint in opposition to a properly supported summary judgment motion made against him." First National Bank v. Cities Service Co., 391 U.S. 253, 289, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968) (footnote omitted). Rather, a party opposing a motion for summary judgment must present significant probative evidence, in the form of specific facts, to support the claim of the existence of a genuine issue of material fact. First National Bank v. Cities Service Co., 391 U.S. 253, 289–90, 88 S.Ct. 1575, 1592–1593, 20 L.Ed.2d 569 (1968); General Electric Co. v. Hol-Gar Manufacturing Corp., 431 F.Supp. 881, 884 (E.D.Pa. 1977), aff'd w. o. opinion 573 F.2d 1301 (3d Cir. 1978); Scooper Dooper, Inc. v. Kraftco Corp., 494 F.2d 840, 848 (3d Cir. 1974).

Federal Rule of Civil Procedure 56(e) further provides that supporting and opposing affidavits must be based on personal knowledge and shall contain facts which would be admissible in evidence. Thus, it is insufficient for the party opposing a motion for summary judgment to rely upon suppositions, conjecture or to assert that an issue may arise at a future date. Robin Construction Co. v. United States, 345 F.2d 610, 613–14 (3d Cir. 1965); Carter v. Cuyler, 415 F.Supp. 852, 855 (E.D.Pa. 1976).

## B. PHMC and Hobbs Are Entitled to Summary Judgment

In his response to Defendants' Motions for Summary Judgment, plaintiff has not come forward with specific facts to indicate that there are genuine issues for trial.

Plaintiff's complaint (¶ 7–8, Exhibit "A") specifies that PHMC's Outreach Phase contracts were the cost reimbursement contracts under which false claims were made resulting in a surplus of revenues over expenses. See note 2, supra, and accompanying text. The undisputed evidence establishes that there was no surplus under those contracts. PHMC's auditors, Peat, Marwick, Mitchell & Co. submitted an affidavit and audited schedules of revenues and expenses under the Outreach Program for the periods alleged in plaintiff's complaint which established that there was no surplus under these contracts. In addition, PHMC submitted affidavits of the present and former executive directors of PHMC stating that the Outreach Program operated on a cost reimbursement basis and did not accumulate any excess of revenues over expenses during the relevant period.[6]

Plaintiff has not offered any evidence to dispute these facts. Even though plaintiff's affidavit asserts that he was

---

**6.** Plaintiff challenges the Outreach Program's financial statements submitted by PHMC, stating that they are based upon projections and that, by their own terms, they must be considered in conjunction with PHMC's overall financial statements. In its reply memorandum, PHMC submits an additional affidavit of Peat, Marwick, Mitchell & Co. explaining the qualifying language contained in the statements and establishing that the figures submitted in the financial statements for the Outreach Program are fair and accurate in all material respects. Plaintiff has offered no evidence to contradict this subsequent affidavit.

knowledgeable about PHMC's submissions to DPW in his capacity as Welfare Program Specialist II for the Southeastern Region of DPW, plaintiff does not offer a single specific example of the false claims allegedly submitted by PHMC under the EPSDT cost reimbursement contracts. Rather, in his affidavit and memorandum, plaintiff attempts to introduce matters not pleaded in his complaint regarding the propriety of Hobbs' former service as a member of PHMC's Board of Directors, the propriety of a continued series of negotiated contracts "between and amongst the Defendants" as opposed to public bidding, and the general propriety of PHMC's overall corporate surplus of $640,000 during the years in question. Not only do these matters go beyond the allegations of the complaint, but they are not within the ambit of the False Claims Act. For example, the Act does not proscribe negotiations, contracting, or the creation of general surpluses or reserves *per se*. It proscribes false claims submitted to the United States for payment. As such, these matters cannot constitute disputed issues of material fact which would preclude granting a motion for summary judgment.

Aside from these matters, plaintiff's affidavit addresses two additional areas in an attempt to establish the existence of genuine issues of fact. He asserts that PHMC made a surplus of $768,000 under the EPSDT Program during the years 1974–1977. However, the affidavits and statements submitted by PHMC establish that any EPSDT surplus it may have had during the years 1974–1977 did not result from an excess of revenues over expenses under the cost reimbursement contracts alleged in plaintiff's complaint. The logical inference is that the alleged EPSDT surplus flowed from revenues received under other EPSDT contracts. For example, PHMC has established by affidavit that it received payment from the Commonwealth under the Administrative Phase of the EPSDT program pursuant to fixed fee contracts. It is logical to assume that these contracts were a source of the surplus. In any event, even if the court could ignore this logical inference, it remains that plaintiff has not alleged nor produced evidence that false claims were submitted under non-cost reimbursement EPSDT contracts.

In his affidavit, plaintiff also asserts that certain alleged inconsistencies existed in the allocation of expenses under the Outreach Program contracts.[7] In setting forth these alleged inconsistencies, plaintiff does not challenge the central fact that there was no surplus under the Outreach Program. Rather, he simply sets forth these discrepancies and labels them as "illogical" and "intentionally deceptive."

Without evidence that there was some irregularity in the method of allocation, plaintiff's statements constitute mere conjecture which cannot constitute evidence sufficient to defeat a motion for summary judgment. Plaintiff does not allege in his complaint, nor assert in his affidavit, that these inconsistent allocations amounted to false claims. In spite of his asserted access to "documents, reports, financial statements and other written material" relating to the programs and expenditures of DPW and PHMC, plaintiff does not come forward with a single example of an instance in which PHMC "padded" or misrepresented its expenses. Defendants have produced affidavits by independent auditors, which state that the figures contained in these statements are accurate and fair in all material respects. Plaintiff's speculations about PHMC's method of allocating its expenses do not constitute specific facts sufficient to raise a genuine issue for trial, particularly in light of the undisputed statements of these independent auditors.

■ Reduced to its simplest terms, the plaintiff's argument is that because the defendant made a surplus under the EPSDT

---

7. Plaintiff notes that for the 21 month period ending March, 1976, management and general expenses were $72,000 and salaries/wages were $41,000. For the 15 month period ending June 30, 1977, he notes that the management and general expenses were $338,000 and salaries/wages were $1,163,000. For the six month period ending December 31, 1977, he notes that management and general expenses were $189,000 and salaries/wages were $667,000.

Program, the defendant must have submitted false claims. The plaintiff has the burden of producing some probative and competent evidence to support this bare allegation. He has not produced such evidence and nothing in plaintiff's pleadings or affidavit show that he might reasonably be able to do so. Defendants should not be subjected under such circumstances to discovery fishing expeditions. *See United States ex rel. Brensilber v. Bausch & Lomb Optical Co.*, 131 F.2d 545, 547 (2nd Cir. 1942).

■ Broadly speaking, the objectives of the False Claims Act are to protect the federal treasury. *United States v. Neifert-White Co.*, 390 U.S. 228, 233, 88 S.Ct. 959, 962, 19 L.Ed.2d 1061 (1968). Nonetheless, the Act and the court decisions interpreting it do not excuse a plaintiff from meeting its burden of proof. Speculation and conjecture form the basis of plaintiff's complaint and counter affidavit. Such will not suffice to overcome a motion for summary judgment. *Robin Construction Co. v. United States*, 345 F.2d 610, 614 (3d Cir. 1965).

The foregoing discussion relates with equal force to plaintiff's claims against defendant Hobbs insofar as they are based upon his purported authorization and approval of PHMC's alleged false claims. In view of the court's dismissal of the complaint against all defendants, it shall not be necessary to reach Hobbs' remaining alternative arguments addressed to plaintiff's allegation that Hobbs authorized and approved Littlejohn's alleged false claims.

Given the above disposition of the claims against all three defendants, the only claim which remains to be addressed is defendant Littlejohn's counterclaim against plaintiff for abuse of process. For the reasons set forth below, Littlejohn's counterclaim is dismissed without prejudice.

■ In its counterclaim, defendant Littlejohn asserts that plaintiff brought suit against Littlejohn without probable cause; that plaintiff's allegations are unfounded, patently untrue; that plaintiff knew, or by reasonable effort could have known that they are untrue; and that the action is willful, wanton and carried out with reckless disregard for the facts. From these allegations, it is unclear whether Littlejohn intends to assert an action for malicious prosecution or for abuse of process.[8] (In addition, Littlejohn has failed to assert

**8.** It is to be noted that the choice of law rules of the forum state are applied to determine which state's law governs the counterclaim. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Day & Zimmermann, Inc. v. Challoner*, 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975) (*per curiam*). Under the flexible contacts/interest analysis adopted in Pennsylvania in *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964), the substantive law of Pennsylvania would govern in determining the counterclaim since plaintiff is a resident of Pennsylvania, the main action involves contracts entered into between Littlejohn and an agency of the Commonwealth of Pennsylvania, and no other state appears to have a dominant interest in the occurrences. *See Restatement (Second) of the Conflict of Laws* § 155 (1971) and *Simkins Industries, Inc. v. Fuld & Co.*, 392 F.Supp. 126, 128–29 (E.D.Pa.1975).

Under Pennsylvania law, favorable termination of the underlying action is required before a claim for malicious prosecution can be brought. *See* 42 Pa.C.S.A. §§ 8351–8354 (effective February 17, 1981); *Publix Drug Co. v. Breyer Ice Cream Co.*, 347 Pa. 346, 348–49, 32 A.2d 413, 415 (1943); *Hughes v. Swinehart*, 376

F.Supp. 650, 653 (E.D.Pa.1974). Thus, it is premature to assert a counterclaim for malicious prosecution in the action which is alleged to have been maliciously or wrongfully brought. *Realco Services, Inc. v. Holt*, 479 F.Supp. 880, 885 (E.D.Pa.1979); *United States v. Levering*, 446 F.Supp. 977, 979 (D.Del.1978); *Wetherington v. Phillips*, 380 F.Supp. 426, (E.D.N.C.1974), aff'd w. o. opinion, 526 F.2d 591 (4th Cir. 1975). On the other hand, under Pennsylvania law, a claim for abuse of process accruing prior to February 17, 1981, does not require termination of the underlying action and does not depend upon the absence of probable cause. Rather, the gravamen of a claim for abuse of process is that process, while correctly instituted, was employed to accomplish an unlawful purpose for which it was not intended. *See Blumenfeld v. R. M. Shoemaker Co.*, —— Pa.Super. ——, 429 A.2d 654, 656 (1981) and cases cited therein at n.3; *Kedra v. City of Philadelphia*, 454 F.Supp. 652 (E.D.Pa.1978). Moreover, in claims for abuse of process accruing prior to February 17, 1981, claimant must allege that an arrest of the person or seizure of property was made. *Blumenfeld v. R. M. Shoemaker Co.*, —— Pa.Super. ——, 429 A.2d 654, 656 (1981).

the basis of subject matter jurisdiction under which it proceeds.) To the extent that Littlejohn asserts a counterclaim for abuse of process which accrued prior to February 17, 1981, it fails to state a claim upon which relief can be granted, since there is no allegation of a seizure of person or property. To the extent that Littlejohn asserts a counterclaim for malicious prosecution, the claim is not ripe. For these reasons, Littlejohn's counterclaim is dismissed without prejudice.[9] *Simkins Industries, Inc. v. Fuld & Co.*, 392 F.Supp. 126 (E.D.Pa.1975).

An appropriate order follows.

## ORDER

AND NOW, this 6th day of August, 1981, it is hereby ORDERED that:

1. Defendant Philadelphia Health Management Corporation's motion for summary judgment is hereby GRANTED and Count I of plaintiff's complaint is DISMISSED with prejudice.

2. Count II of plaintiff's complaint is DISMISSED without prejudice.

3. Defendant Littlejohn's counterclaim against plaintiff is DISMISSED without prejudice.

4. Defendant Wilbur E. Hobbs' motion for summary judgment is GRANTED in part, insofar as it relates to knowledge, authorization and approval of matters alleged in Count I of plaintiff's complaint. Therefore, Count III of plaintiff's complaint is DISMISSED with prejudice, insofar as Count III relates to Hobbs' knowledge, authorization and approval of matters alleged in Count I of plaintiff's complaint. Count III of plaintiff's complaint is DISMISSED without prejudice, insofar as it relates to Hobbs' knowledge, authorization and approval of matters alleged in Count II of plaintiff's complaint.

---

**9.** In addition, this court notes that the attorney for Littlejohn did not sign the Answer which contains Littlejohn's counterclaim. This alone could provide a sufficient basis for striking the counterclaim. *See* Fed.R.Civ.Pro. 11.