**UNITED STATES of America ex rel. Jake LAPIN, Plaintiff,**

v.

**INTERNATIONAL BUSINESS MACHINES CORPORATION, Defendant.**

Civ. No. 79–0264.

United States District Court, D. Hawaii.

May 16, 1980.

Walter M. Heen, U. S. Atty., Honolulu, Hawaii, Alice Daniel, Acting Asst. Atty. Gen., J. Roger Edgar, Robert L. Ashbaugh, Richard W. Oehler, Attys., Civ. Div., Dept. of Justice, Washington, D. C., for United States of America.

Evan R. Shirley, Elbridge W. Smith, Honolulu, Hawaii, for plaintiff Jake Lapin.

G. Richard Morry, Michiro Iwanaga, Hamilton, Gibson, Nickelsen, Rush & Moore, Honolulu, Hawaii, Max O. Truitt, Jr., Marie N. Doland, Washington, D. C., for defendant.

### DECISION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF JURISDICTION

SAMUEL P. KING, Chief Judge.

Plaintiff-Relator Jake Lapin filed this *qui tam* suit on behalf of himself and of the

United States against International Business Machines Corporation ("IBM") pursuant to the False Claims Act, 31 U.S.C. § 231 *et seq.*, alleging that IBM made false claims upon the Government of the United States in the form of "provisional overbillings" and seeking to assess against Defendant IBM double damages and a $2000 fine pursuant to § 231.

The case is presently before this Court on Defendant IBM's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) on the ground that this Court lacks subject matter jurisdiction. After considering the briefs of counsel and oral argument of March 17, 1980, this Court grants Defendant's Motion to Dismiss.

## FACTUAL BACKGROUND

On June 15, 1979, Plaintiff-Relator Lapin filed *pro se* a *qui tam* action pursuant to the False Claims Act, 31 U.S.C. § 231 *et seq.*, against IBM. Lapin then obtained counsel and filed on December 26, 1979, a First Amended Complaint and on March 14, 1980, an Affidavit concerning the allegations in his original *pro se* complaint.

In his First Amended Complaint and his Affidavit, Lapin states that he became aware of the contractual arrangements between the United States and IBM that are the subject of this suit while he was a government employee. He alleges that since around 1973 various agencies of the United States Government have entered into yearly written contracts with IBM (the standard form of which is exemplified by Contract GS–OOC–01522) pursuant to which the Government leases automatic data processing equipment. These contracts provide that IBM will make billings from the installation date of the equipment, but that the billings are subject to subsequent adjustment if the equipment does not perform at the requisite level. Specifically, should there be any interval between installation and the onset of the equipment's "successful performance period" (a period of 30 or 90 days, depending on the model of the equipment, during which the equipment performs at an effectiveness level of at least 90%), then the Government is entitled,

upon application, to a refund for the lease rent billed by IBM for that interval. Lapin contends that the Government does not maintain the records necessary to make application for refunds for these alleged "provisional overbillings," that it rarely has applied for such refunds, and that he suspects that the Government is entitled to refunds that it does not know about and has not claimed. Lapin states that he told various agencies of the Government his suspicions, but that they took no action. He further claims that only IBM has access to the information necessary to determine the amount of the "provisional overbillings."

In Counts I through VI of his First Amended Complaint, Lapin alleges that the "provisional overbillings" constitute "false claims" under 31 U.S.C. § 231. Counts VII and VIII of the First Amended Complaint add federal and state causes of action for "deceptive practices in commerce." In Count VII Lapin alleges that the "provisional overbillings" are in violation of the Federal Trade Commission Act, 15 U.S.C. § 41 *et seq.*, apparently asserting jurisdiction based on § 4 of the Clayton Act, 15 U.S.C. § 15. Count VIII is a pendent state claim in which Lapin alleges that the "provisional overbillings" are in violation of Chapters 480, 481, and 481A of the Hawaii Revised Statutes.

The False Claims Act, 31 U.S.C. § 231 *et seq.*, establishes a cause of action against persons making false claims upon the United States. Section 231 defines such claims and sets forth the liability of persons making those claims. Section 232 outlines the procedure for such suits: specifically, § 232(A) confers jurisdiction over such suits on the district courts, § 232(B) provides for *qui tam* suits, and § 232(C) allows the United States to enter appearance in and carry on such suits, provided that it is timely and diligent in doing so. Section 232(C) also deprives the district courts of jurisdiction over *qui tam* suits based on information in the possession of the United States.

On October 23, 1979, the United States, by an Acting Assistant Attorney General, filed a Report to the Court, in which it

declines to appear in this suit, stating its "opinion that its rights can be more effectively asserted under the contract and through administrative channels" and its concern that this Court may lack subject matter jurisdiction. The United States requests, however, that any dismissal by this Court be made without prejudice to its right to bring suit at a later date.

Defendant IBM filed a Motion to Dismiss the original Complaint on August 7, 1979, and a Motion to Dismiss the First Amended Complaint on January 7, 1980, on the ground that this Court has no jurisdiction over this case.

ISSUES PRESENTED

Defendant IBM contends that under § 232(C) this Court has no jurisdiction over the "false claims" counts in this case. IBM makes three arguments in support of this contention: first, that the United States had information sufficient to enable it to bring this suit at the time Lapin filed it; second, that Lapin disclosed to the United States the information upon which he bases his suit before he filed it, and hence the information was in the possession of the United States at the time this suit was filed; and third, that Lapin learned of the information upon which he bases his suit as a government employee. IBM also contends that Lapin has no standing to bring the federal "deceptive practices" count, and that therefore this Court has no jurisdiction over the pendent state "deceptive practices" count.

Lapin, after obtaining counsel, argues on analogy to Federal Rule of Civil Procedure 56(f) that the Court should not conclude that it does not have jurisdiction over this case until it permits Plaintiff-Relator to discover information known to IBM but not to Lapin or the United States.

RULING

■ Section 232(C) of the False Claims Act, 31 U.S.C. § 231 *et seq.*, deprives this Court of jurisdiction over suits based on information already in the possession of the United States at the time the suit is brought. Plaintiff-Relator in this case makes no allegation that his suit is based on information beyond what he gave the Government before he brought this suit. Hence, § 232(C) deprives this Court of jurisdiction.

Jurisdiction over the "false claims" counts in this case must derive from the jurisdictional grant in § 232. Subsection (A) grants district courts jurisdiction over § 231 suits generally, whether the suit is brought by the United States or brought under subsection (B) as a *qui tam* suit by a relator "as well for himself as for the United States . . . ." Subsection (C) makes further provisions regarding *qui tam* suits:

Whenever any such suit shall be brought by any person under clause (B) of this section notice of the pendency of such suit shall be given to the United States by serving upon the United States attorney for the district in which such suit shall have been brought a copy of the bill of complaint and by sending, by registered mail, or by certified mail, to the Attorney General of the United States at Washington, District of Columbia, a copy of such bill together with a disclosure in writing of substantially all evidence and information in his possession material to the effective prosecution of such suit. The United States shall have sixty days, after service as above provided, within which to enter appearance in such suit. If the United States shall fail, or decline in writing to the court, during said period of sixty days to enter any such suit, such person may carry on such suit. If the United States within said period shall enter appearance in such suit the same shall be carried on solely by the United States. In carrying on such suit the United States shall not be bound by any action taken by the person who brought it, and may proceed in all respects as if it were instituting the suit: *Provided,* That if the United States shall fail to carry on such suit with due diligence within a period of six months from the date of its appearance therein, or within such additional time as the court after notice may allow, such suit may be carried on by the person bringing the same in accordance with clause (B) of this section.

Thus, if the United States wants to carry on the suit, it must enter the suit in a timely fashion and pursue it diligently; if it fails to do so, the relator may carry on the suit. Inaction by the United States does not affect the jurisdiction of the district court.

This was the extent of § 232(C) prior to the 1943 amendment, 57 Stat. 608, which added the following language:

The court shall have no jurisdiction to proceed with any such suit brought under clause (B) of this section or pending suit brought under this section whenever it shall be made to appear that such suit was based upon evidence or information in the possession of the United States, or any agency, officer or employee thereof, at the time such suit was brought . . . .

The Ninth Circuit reviewed the legislative history of the 1943 amendment to § 232(C) in *Pettis ex rel. United States v. Morrison-Knudsen Co.*, 577 F.2d 668 (9th Cir. 1978):

Early in 1943 the Supreme Court held, under the then existing version of the False Claims Act, which had its origin in the Act of March 2, 1863, 12 Stat. 696, c. 67, that a *qui tam* or informer action could be maintained by a private person on behalf of the United States even when based solely on information acquired from an indictment. *United States ex rel. Marcus v. Hess*, 317 U.S. 537, 545–48, 63 S.Ct. 379 [384–86], 87 L.Ed. 443 (1943). The immediate concern of Congress was to do away with these so-called 'parisitical suits.' *United States v. Pittman*, 151 F.2d 851, 854 (5th Cir. 1945), *cert. denied*, 328 U.S. 843, 66 S.Ct. 1022, 90 L.Ed. 1617 (1946); *United States v. Rippetoe*, 178 F.2d 735, 736 (4th Cir. 1949).

*Id.* at 671. Congress was loathe to have plaintiff-relators receive compensation under § 232(E) for bringing suits based on information that already had been gathered by the Government in the course of law enforcement.

The 1943 amendment pertains to circumstances that in all respects parallel the circumstances covered by the original § 232(C) except that the informer has gone first to the United States with information, yet the amendment does not place the parallel requirement on the United States that it bring the suit in a timely fashion and pursue it diligently. Nor does it allow the suit to be brought by the informer if the United States does not bring suit itself. Instead, if the *qui tam* suit is based on information already in the United States' possession, the amendment completely deprives the district courts of jurisdiction. The face of the amendment evidences no concern as to whether or not a suit is filed regarding the alleged false claims; rather, it leaves entirely in the hands of the United States the decision as to whether and how vigorously to proceed on the information.

The debate over the amendment in the House of Representatives evidences possible confusion on this very issue, as the court in *Pettis* noted:

MR. KEFAUVER. In the second place, if he has information and he gives it to the Government, and the Government does not proceed in due course, provision is made here where that suit can be brought and where he can get some compensation?

MR. HANCOCK. That is correct.

89 Cong.Rec. 10849 (Dec. 17, 1943).

577 F.2d at 672. However, it is clear from the language of the statute that the informer who has turned over his information to the United States cannot bring a suit under § 232 if the Government then fails to act. As the court in *Pettis* concluded:

We have no doubt but that under such circumstances the intent of Congress resides in the words of the statute. That is, discharge of our obligation to follow the intent of Congress requires that we assume that Congress said what it meant and meant what it said.

577 F.2d at 672.

Application of § 232(C) would seem most egregious in the case in which an honest informer reports information of a false claim to a government official who himself is involved in the fraud. The Fourth Circuit has carved an exception to the § 232(C)

jurisdictional bar in just such a case, *United States v. Rippetoe*, 178 F.2d 735 (4th Cir. 1949), reasoning that knowledge on the part of an agent engaged in an attempt to defraud his principal will not be imputed to the principal and that, therefore, the United States does not possess the information. Plaintiff-Relator Lapin does not argue that the *Rippetoe* exception should apply in this case, nor does anything in the record suggest that to be appropriate. To the contrary, the United States' Report to the Court suggests that the Government is considering various avenues available to remedy any existing problems.

In *Pettis*, appellant-relator Pettis argued that there should be exceptions to the § 232(C) jurisdictional bar for cases in which the Government's information had been supplied by the relator and for cases in which the relator had information beyond that in the possession of the Government. The court in *Pettis* refused to recognize the appellant's first proposed exception on the basis of its reading of the statute in the light of its legislative history, as discussed above. It also refused to recognize the appellant's second proposed exception on the facts in *Pettis*, although it refrained from stating a standard as to "the extent to which the information on which the suit is based must be identical to the information in the possession of the United States in order for the jurisdictional bar to be invoked." 577 F.2d at 674. In the instant case, Plaintiff-Relator Lapin does not even allege that he has more information than does the Government. There is, therefore, no room to argue the second exception in this case. Neither is there reason to delay ruling on the motion before this Court pending discovery, since it is not even alleged that such discovery would show that Plaintiff-Relator had more information than did the Government at the time the suit was filed.

None of the possible exceptions to § 232(C) is applicable, and the language of § 232(C), as interpreted in the light of its legislative history by the Ninth Circuit, clearly deprives this Court of jurisdiction over this case · in which Plaintiff-Relator Lapin has told the United States the suspicions upon which he bases his suit. Counts I through VI therefore must be dismissed for lack of jurisdiction.

■ Lapin also alleges a federal "deceptive practices" claim under the Federal Trade Commission Act, 15 U.S.C. § 41 *et seq.*, apparently basing jurisdiction on § 4 of the Clayton Act, 15 U.S.C. § 15. However, Lapin has no standing to assert a claim on behalf of the United States under the antitrust laws. Insofar as the United States has been harmed, "under § 4 of the Act, . . . it is the Attorney General and the United States district attorneys who are primarily charged by Congress with the duty of protecting the public interest under [this law]." *United States v. Borden Co.*, 347 U.S. 514, 518, 74 S.Ct. 703, 706, 98 L.Ed. 903 (1954). Section 4 of the Clayton Act makes no provision for *qui tam* actions. In any event, § 4 does not confer jurisdiction over suits for violations of the Federal Trade Commission Act. Nor does the Federal Trade Commission Act make provision for a private right of action, either explicit or implicit; "the Act vests initial remedial power solely in the Federal Trade Commission." *Carlson v. Coca-Cola Company*, 483 F.2d 279, 280 (9th Cir. 1973) (citations omitted). Accordingly, Count VII must be dismissed.

This Court thus has no jurisdiction over Plaintiff's federal claims and therefore must dismiss Count VIII, Plaintiff's pendent state claim.

Accordingly, IT IS HEREBY ORDERED that Defendant IBM's Motion to Dismiss is GRANTED, without prejudice to the right of the United States to assert on its own behalf the allegations contained in this case.