**Richard ZAPPALA and Ronald A. Rosenfeld, trading as First City Rochester Associates, Plaintiffs,**

**v.**

**HUB FOODS, INC., Michael P. Ondrusek, Jr., Amelia A. Ondrusek, Mark Ondrusek, Wetterau Incorporated, and Wetterau Finance Company, Defendants.**

Civ. A. No. 88–86.

United States District Court,
W.D. Pennsylvania.

April 18, 1988.

Stephen F. Ban, Springer, Bush & Perry, David J. Fasulo, Pittsburgh, Pa., for plaintiffs.

E.J. Strassburger, Pittsburgh, Pa., for Hub Foods and Ondrusek.

Samuel P. Kamin, Goldberg & Kamin, Pittsburgh, Pa., for Wetterau Inc. and Wetterau Finance Co.

## MEMORANDUM ORDER

COHILL, Chief Judge.

The plaintiffs in the above-captioned action, Richard A. Zappala and Ronald A. Rosenfeld, trading as First City Rochester Associates (collectively referred to as "First City"), have filed (1) a Motion to Dismiss Counterclaim of Defendants Hub Foods, Inc., Michael P. Ondrusek, Jr., and Mark Ondrusek (collectively "Hub Foods") and to Strike Affirmative Defense of Statute of Limitations, and (2) a Motion to Dismiss Counterclaim of Defendants Wetterau Incorporated and Wetterau Finance Company (collectively "Wetterau") and to Strike Affirmative Defense of Statute of Limitations. For the reasons set forth below, we will grant First City's motions to dismiss the counterclaims and will deny First City's motions to dismiss the statute of limitations defenses.

## I. BACKGROUND

Hub Foods, one of the defendants, subleases a building in the Kaufmann Rochester Shopping Center, Rochester, Beaver County, Pennsylvania, and operates a Foodland grocery store in it. The building, and the entire shopping center in which it is located, is owned by plaintiff First City. The lease under which Hub Foods occupies the building contains a restrictive covenant preventing First City from permitting another grocery store to operate on the shopping center property. First City has leased approximately one half of the shopping center to Giant Eagle, Inc. for use as a grocery store. The Giant Eagle store is scheduled to open in May, 1988.

Hub Foods commenced litigation against First City and Giant Eagle, Inc. in the Court of Common Pleas of Beaver County,

Pennsylvania, at No. 832–1987. The Court dismissed that action on the grounds that Hub Foods, as a subleasee, did not have standing to enforce the restrictive covenant. Hub Foods currently has an appeal pending before the Superior Court of Pennsylvania.

Hub Foods then sued its sublessor, Wetterau Finance Company in the Court of Common Pleas of Beaver County at No. 1175–1987 seeking to force it to enforce the covenant in their lease with First City. Wetterau Finance joined First City and Giant Eagle as additional defendants. A hearing has been scheduled for April 26, 1988, on Hub Foods' and Wetterau's motions for injunctive relief.

First City filed a Complaint in this court on January 13, 1988, alleging that Hub Foods and Wetterau violated Section 1 of the Sherman Act, 15 U.S.C. § 1, by combining and conspiring among themselves and with others in refusing to establish a super grocery store at First City's shopping center in Beaver County, Pennsylvania, and by combining and conspiring to prevent others from establishing a super grocery store in the shopping center.

In response to the Complaint, Hub Foods and Wetterau both filed an Answer and Counterclaim. The counterclaims allege that First City's conduct in filing the Complaint in this Court constitutes an abuse of process. First City responded by filing motions to dismiss the defendants' counterclaims and motions to strike the defendants' statute of limitations defenses.

## II. MOTIONS TO DISMISS COUNTERCLAIMS

In both motions to dismiss, First City argues that Hub Foods' and Wetterau's abuse of process counterclaim must be dismissed since neither defendant has properly pled such cause of action.

At the outset, we note that Pennsylvania law governs. Choice of law rules of the forum state are applied to determine which state's law governs a counterclaim. *Klaxon Co. v. Stentor Elec. Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Under the flexible con-

tacts/interest analysis adopted in Pennsylvania in *Griffith v. United Air Lines, Inc.*, 416 Pa. 1, 203 A.2d 796 (1964), the substantive law of Pennsylvania would govern in determining the counterclaim since the plaintiff is a resident of Pennsylvania, the action involves contracts entered into in Pennsylvania, and no other state appears to have a dominant interest in the events at issue.

Pennsylvania recognizes two separate and distinct forms of civil tort actions to recover for damages incurred as the result of another's misuse of legal processes. One action is for abuse of process. The gist of an abuse of process claim is the improper use of process after it has been issued; where a "party employs it for some unlawful object not the proper purpose which it is intended by the law to effect." *McGee v. Feege*, —— Pa. ——, ——, 535 A.2d 1020, 1023 (1987) (citing *Publix Drug Company v. Breyer Ice Cream Co.*, 347 Pa. 346, 32 A.2d 413 (1943)). A seizure of property is not an element to an abuse of process claim *Id.* at 1026. Typical forms of abuse of process include extortion by means of attachment, execution or garnishment, and blackmail by means of arrest or criminal prosecution. W. Prosser & W. Keeton, *Prosser and Keeton on Torts* § 121 (5th ed. 1984).

Distinct from an abuse of process claim is a claim for malicious use of process, i.e. the wrongful initiation of a legal proceeding. While this form of action was originally founded on the common law, the Pennsylvania legislature codified it in 1980 in the Dragonetti Act. 42 Pa.C.S. § 8351–54. *See Denenberg v. AM Family Corp. of Columbus, Ga.*, 566 F.Supp. 1242, 1247 n. 4 (E.D.Pa.1983). Unfortunately, neither the plaintiffs nor the defendants cited this Act in their briefs.

Section 8351 provides;

**Wrongful use of civil proceedings**

(a) Elements of action—A person who takes part in the procurement, initiation or continuation of civil proceedings against another is subject to liability to the other for wrongful use of civil proceedings, if:

(1) He acts in a grossly negligent manner or without probable cause and primarily for a purpose other than that of securing the proper discovery, joinder of parties or adjudication of the claim in which the proceedings are based; and

(2) The proceedings have terminated in favor of the person against whom they are brought.

(b) Arrest or seizure of person or property not required—The arrest or seizure of the person or property of the plaintiff shall not be a neceesary element for an action brought pursuant to this subchapter.

42 Pa.C.S. § 8351.

Section 8354 provides that a plaintiff alleging wrongful use of civil proceedings must prove (1) that the defendant procured, initiated or continued civil proceedings against him, (2) that the proceedings were terminated in his favor, (3) that the defendant did not have probable cause for his action, (4) that the primary purpose for which the proceedings were brought was not that of securing the proper discovery, joinder of parties or adjudication of the claim upon which the proceedings were based, and (5) the plaintiff has suffered damages as set forth in section 8353. 42 Pa.C.S. § 8354.

■ The pleadings and briefs filed by the defendants evidence a misunderstanding of the distinction between an abuse of process claim and a wrongful use of process claim. Both defendants state that their counterclaims are for abuse of process in that the plaintiff's complaint "has been instituted solely for the purpose of harassing defendants and diminishing their ability to continue actions against and/or involving plaintiffs in the Court of Common Pleas of Beaver County, Pennsylvania." Answer of Hub Foods at 11; Answer of Wetterau at 6.

In its Brief in Opposition to Plaintiff's Motion to Dismiss, Hub Foods states that it is asserting a claim for relief "for litigation instituted for an improper purpose or ulterior motive." Hub Foods' Brief in Opposition at 6. Hub Foods adds that First City's intent "is to drain further Hub's financial resources, shift the focus of its attorneys away from the state court action and appeal and to the federal court action, and serve as a bargaining chip during conciliation efforts at the state court level." *Id.* The instant litigation "is that abuse of process for which Hub Foods asserts a counterclaim." *Id.* at 7.

In its Brief in Support of Answer to Plaintiff's Motion to Dismiss, Wetterau first reviews the law on abuse of process claims. Wetterau then states that its counterclaim is based on First City's "perversion of the anti-trust laws for the purpose of diminishing Wetterau's claims pending in the Court of Common Pleas of Beaver County." Wetterau's Brief in Support at 3–4.

While both Hub Foods and Wetterau insist that their counterclaims fall under the rubric of "abuse of process," we disagree. An abuse of process claim may be asserted where an individual improperly uses process after it has been issued. Neither defendant alleges that First City is abusing previously issued process; there are no averments that First City is abusing process, subsequent to its issuance, for purposes other than that for which it was designed.

Hubs Foods and Wetterau are attempting to assert claims for wrongful use of civil proceedings as provided for in 42 Pa.C.S. § 8351. Allegations of the bringing of an unfounded or malicious action are "germane to an action for malicious use of process, not an action for abuse of process." *McGee,* —— Pa. at ——, 535 A.2d at 1025. Section 8351 provides a cause of action in tort against one who wrongfully initiates civil proceedings against another for improper purposes. That is precisely what Hub Foods and Wetterau are alleging here; that First City has filed this antitrust action solely to draw attention away from state court proceedings and not to legitimately assert an antitrust claim. It is First City's use of the legal process in filing this action that is the alleged tort. Regardless of the caption the defendants desire to place on their counterclaims, they are asserting claims under Section 8351.

Section 8351, on its face, requires that the proceeding alleged to be the misuse of legal process terminate in favor of the defendants before the defendant's claim for wrongful use of civil proceedings is ripe for adjudication. *See also* 42 U.S.C. § 8354(2) (plaintiff has burden of proving, *inter alia*, that prior proceedings were terminated in his favor). The defendants cannot possibly make the required allegation in their counterclaim because this action is still pending. Accordingly, Hub Foods' and Wetterau's counterclaims based on First City's alleged wrongful use of civil proceedings have not matured and must be dismissed without prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim for which relief may be granted. *Linker v. Custom–Bilt Machinery, Inc.*, 594 F.Supp. 894, 902 (E.D.Pa. 1984) (counterclaim for wrongful use of process dismissed where there was no prior proceeding that terminated in defendant's favor); *United States v. Philadelphia Health Management Corp.*, 519 F.Supp. 818, 825 n. 8 (E.D.Pa.1981) (it is premature to assert a counterclaim for malicious prosecution in the action which is alleged to have been maliciously or wrongfully brought). Lastly, we note that while Hub Foods attempted to use the *Linker* decision in support of its argument that this court has jurisdiction over an abuse of process counterclaim, it failed to note that the counterclaim in that case was dismissed for failure to state a claim.

## III. MOTION TO STRIKE DEFENSE OF STATUTE OF LIMITATIONS

First City has also requested that the Court strike Hub Foods' and Wetterau's statute of limitations defenses pursuant to Rule 12(f) of the Federal Rules of Civil Procedure. First City asserts that the earliest operative fact giving rise to its antitrust action occurred in June, 1986, well within the four year statute of limitations period governing antitrust actions. In response, both Hub Foods and Wetterau contend that the statute of limitations for this action commenced in 1967, the year in which the restrictive covenant allegedly being used by them in furtherance of their alleged illegal antitrust activities was signed.

■ While Rule 12(f) permits a court to strike from a pleading any insufficient defense, such motions are not favored by the courts. *Mitchell v. Bendix Corp.*, 603 F.Supp. 920, 921 (N.D.Ind.1985). They are ordinarily granted only where the language in the pleading at issue has no possible relation to the controversy and is clearly prejudicial to the movant. *Id.* A motion to strike is not the proper device for placing the actual merits of the party's pleadings in issue. *Armstrong v. Snyder*, 103 F.R.D. 96, 100 (E.D.Wis.1984).

■ Because: (1) there appears to be a genuine issue of fact and law over the date when the statute of limitations began to run on First City's antitrust claim, and (2) First City has failed to demonstrate how it would be prejudiced in any way if this defense were not striken, we will deny First City's Motion to Strike the statute of limitations defense.

AND NOW, to wit, this 18th day of April, 1988, for the reasons stated above, it is hereby ORDERED, ADJUDGED, and DECREED that First City's motions to dismiss the defendants' counterclaims be and hereby are GRANTED. It is further ORDERED that First City's motions to strike the defendants' statute of limitations defense be and hereby are DENIED.