**William R. MUIRHEAD, and Joseph E. Altomare, Plaintiffs,**

v.

**Harry ZUCKER, Loren Glassman, and Daniel Sachs, Defendants.**

**Civ. A. No. 89–52 Erie.**

United States District Court,
W.D. Pennsylvania.

Nov. 21, 1989.

---

Joseph Altomare, Altomare & Barnhart, Titusville, Pa., for plaintiffs.

Thomas M. Lent, Marsh Spaeder Baur Spaeder & Schaaf, Erie, Pa., for defendant Glassman.

Daniel Y. Sachs, New Haven, Conn., pro se.

John R. Gavin, Oil City, Pa., for defendant Zucker.

## OPINION

COHILL, Chief Judge.

We stand here like the proverbial blind man holding the tail of an elephant.˙ This is the third lawsuit between these parties, each suit pending in a different court, and each succeeding one farther removed from the core of the dispute. Holding only the tail, it is difficult for us to divine what shape the rest of this beast takes. Nevertheless we endeavor to hold up our end, so to speak.

### FACTS

This matter comes to us on motions to dismiss, and so we accept the facts pleaded in the Complaint as true.

Plaintiff William Muirhead is a businessman in Titusville, Pennsylvania and Plaintiff Joseph Altomare is an attorney in the same town. Muirhead and another gentleman were officers and principal shareholders of Drake Well Oil & Gas Associates, Inc. (Drake). Altomare served the corporation as legal counsel.

Defendants were members of a limited partnership known as United Petroleum Group (United), with Defendant Harry Zucker as general partner. At some point, United obtained drilling rights to a certain tract of land from Consolidated Energy Corp., and began drilling operations.

Unfortunately for United, Consolidated was deep in debt to its principal lender, Pennbank. By the terms of a mortgage and Security Agreement with Consolidated, Pennbank held liens against much or all of the real and personal property of Consolidated.

Consolidated ultimately defaulted and Pennbank, perhaps not fancying its chances of squeezing blood from a stone, sold and assigned its interest in the liens to Drake.

But Drake knew that if one could not squeeze blood from the rock of Northwestern Pennsylvania, it could squeeze oil. And lo and behold, United was pumping oil pursuant to Consolidated's drilling rights! Drake, with Altomare as counsel, began to foreclose and demanded that United's proceeds for oil pumped on Consolidated's drilling rights be paid over to Drake.

Needless to say, United was not happy. United and its partners (defendants in this case) instituted suit against Drake in the

Court of Common Pleas for Venango County, Pennsylvania, challenging the validity of the liens now held by Drake.

Subsequently the United partners filed a civil RICO action against Muirhead and Altomare in the U.S. District Court for the Southern District of New York. Apparently this suit charges Muirhead and Altomare with wrongdoing in connection with Drake's efforts to enforce its liens against United.

Soon after the RICO suit was instituted, the United partners sent a news release to the local newspaper in Muirhead and Altomare's hometown of Titusville. This release purports to describe the allegations of the RICO suit against Muirhead and Altomare. As a result of this release, the Titusville Herald published a story concerning the allegations against Muirhead and Altomare.

Muirhead and Altomare claim that the allegations of the RICO Complaint and the contents of the news release are utterly false, and that the defendants knew them to be false when they published them. Thus Muirhead and Altomare have filed the instant case on the basis of diversity jurisdiction, charging defendants with libel, slander, malicious abuse of process and intentional infliction of emotional distress. All defendants have filed motions to dismiss the various Counts for failure to state a claim. In addition Defendant Zucker, who had delayed responding to the Complaint, seeks to set aside the default which has been entered against him.

## DISCUSSION

### 1. *Default*

When Defendant Harry Zucker did not file a timely responsive pleading after service of the Complaint and Summons, plaintiffs moved for the entry of default and the Clerk obliged. Default judgment has not been entered however. Zucker now seeks to set aside the default because plaintiffs entered a stipulation with Defendant Loren Glassman extending the time for *all* defendants to file a responsive pleading. Plain-

tiffs contend that the stipulation applied only to Glassman.

We have reviewed the file and conclude that the default must be set aside, but not for the reason advanced by defendant. Rather, we conclude that plaintiffs' service of process in the case was defective under the Federal Rules of Civil Procedure.

Rule 4 governs service of process and provides two principal alternatives for service of a Complaint and Summons on an individual. A plaintiff may select *either* Rule 4(c)(2)(C)(i) permitting service in accord with the law of the forum state, *or* Rule 4(c)(2)(C)(ii) which permits service by ordinary mail with the notice and acknowledgment known as Form 18–A.

In the present case, plaintiffs attempted to serve plaintiff pursuant to Rule 4(c)(2)(c)(ii) by mailing a copy of the Summons and Complaint with the requisite notice and acknowledgment form. When Defendant Zucker did not return the acknowledgment form within the limit of 20 days, plaintiffs shifted gears and made service by certified mail pursuant to Pennsylvania law and Federal Rule 4(c)(2)(C)(i).

The problem is that Rule 4(c)(2)(C)(ii) explicitly provides for alternative means of service in the event the defendant fails to sign and return the acknowledgment form, and certified mail is not among the alternatives:

> If no acknowledgment of service under this subdivision of this rule is received by the sender within 20 days after the date of mailing, service of such summons and complaint *shall be made* under subparagraph (A) or (B) of this paragraph in the manner prescribed by subdivision (d)(1) or (d)(3). (Emphasis added).

The referenced alternatives provide for *personal service.*

The provisions of the Rule are mandatory. Although plaintiff initially has the choice of selecting Rule 4(c)(2)(C)(i) or Rule 4(c)(2)(C)(ii), once he has made his selection, he must follow through with the terms of the selected provision. Here plaintiffs opted for Rule 4(c)(2)(C)(ii) but when the initial effort failed they ignored its provisions and reverted to Rule

4(c)(2)(C)(i). This is improper and service made in this manner is defective. *Stranahan Gear Co., Inc. v. NL Industries, Inc.,* 800 F.2d 53, 56–58 (3rd Cir.1986); *Kress v. Scott Instruments,* 116 F.R.D. 631 (W.D. Pa.1987) (Weber, D.J.); *Billy v. Ashland Oil Inc.,* 102 F.R.D. 230 (W.D.Pa.1984) (Cohill, D.J.); *see also, Green v. Humphrey Elevator and Truck Co.,* 816 F.2d 877 (3rd Cir.1987). Thus entry of default was improper and must be set aside.

Despite plaintiffs' defective service, it is clear that Defendant Zucker received actual notice of the suit at an early stage, but he purposely delayed responding to this suit. Service of the Summons and Complaint by both ordinary and certified mail were made at the address provided by Zucker in the New York RICO action. Zucker spoke to Defendant Glassman's attorney at an early stage and was advised of the extension of time to respond granted to Glassman by plaintiffs' counsel. Nonetheless, it appears that Zucker did not consult a lawyer until after the entry of default, a mere three days before Glassman's extension expired.

■ In accord with Fed.R.Civ.P. 4(c)(2)(C)(ii), plaintiffs are directed to make personal service upon Defendant Zucker within 20 days of this Opinion and Order. Zucker is responsible under Fed.R.Civ.P. 4(c)(2)(D) for the costs of such service. *See, Kress,* 116 F.R.D. 631; *Billy,* 102 F.R.D. 230.

We proceed now to discuss the substantive aspects of defendants' motions to dismiss.

### 2. Libel

Plaintiffs contend that the allegations of the RICO Complaint filed by defendants in New York are utterly false, and that defendants reiterated their false allegations in the news release sent to the Titusville Herald. Plaintiffs also contend that the news release conveys the misimpression that plaintiffs have been charged with criminal acts of racketeering, corruption and conspiracy, rather than being the subjects of a civil dispute.

Defendants contend that the allegations of the RICO Complaint are absolutely privileged because they were made in the course of judicial proceedings, and the news release, because it simply reports the allegations of the Complaint, is likewise privileged.

■ Statements made by judges, attorneys, litigants and witnesses in the course of judicial proceedings, regardless whether they are false, defamatory or malicious, are absolutely privileged. This impenetrable shield has been erected to ensure freedom of access and unfettered discourse in the courts. But this absolute privilege does not extend beyond judicial proceedings:

> The same considerations, however, do not apply to newspaper accounts of judicial proceedings, or to remarks uttered at press conferences. These are extra-judicial communications which are not subject to the internal controls of the court system, and do not require the same degree of protection as those communications which are essential to the integrity and independence of the judicial system. As such, they enjoy a qualified immunity only: in the interests of keeping the public informed, newspaper articles are entitled to make fair and accurate report of judicial proceedings and involved parties, witnesses, and counsel are permitted to make remarks to the press relative to proceedings, and no responsibility will attach, even if the contents of articles or remarks are false or defamatory, provided the articles and/or remarks were not published solely for the purpose of causing harm. Where the plaintiff is able to demonstrate that defamatory communications to the press were made for an improper or malicious motive, the qualified privilege is lost. It is a question of fact for the jury as to whether a qualified privilege has been lost by abuse. (Citations omitted).

*Pelagatti v. Cohen,* 370 Pa.Super. 422, 536 A.2d 1337, 1344 (1987), allocatur denied 519 Pa. 667, 548 A.2d 256 (1988). *See also, Post v. Mendel,* 510 Pa. 213, 507 A.2d 351 (1986); *Barto v. Felix,* 250 Pa.Super. 262,

378 A.2d 927 (1977), app. dism. 487 Pa. 455, 409 A.2d 857 (1980).

In the present case plaintiffs have adequately alleged that defendants' release to a local newspaper was not only false and defamatory, but was motivated by malice. Consequently plaintiffs have stated a claim that would survive the assertion of a qualified privilege.

Defendants raise two other points on Count I that are utterly without merit. First of all, defendants contend they only disclosed this information to the newspaper and cannot be liable for its publication. This is ludicrous because it can be fairly assumed that one sends a news release to a newspaper with the intention and expectation that it will be broadly disseminated by the organ, and thus the matter is relevant at least as to damages. Defendants also argue that the contents of the release are not capable of a defamatory meaning. To the contrary, the news release contains allegations of criminal activity and fraud which would be defamatory per se under Pennsylvania law.

### 3. *Slander*

In Count II, plaintiffs allege that Defendant Zucker orally repeated the allegedly defamatory statements of the news release to various persons in plaintiffs' community. Defendants have correctly pointed out that the allegations of Count II concern only Zucker. Plaintiffs agree and consent to dismissal of Count II as to Defendants Glassman and Sachs.

### 4. *Malicious Abuse of Process*

Plaintiffs have alleged that the sole purpose of the RICO action filed by defendants in New York was to pressure plaintiffs into giving up their efforts to foreclose on its liens. Plaintiffs contend that this improper motive constitutes malicious abuse of process under Pennsylvania law.

We are mindful of the distinction between malicious *use* of process and malicious *abuse* of process. Malicious use of process is statutory, 42 Pa.C.S.A. § 8351, and is often referred to as malicious prosecution. Malicious abuse of process is a common law action. There are fundamental differences between the two:

> Malicious use of civil process has to do with the wrongful initiation of such process, while abuse of civil process is concerned with a perversion of a process after it is issued.

*Publix Drug Co. v. Breyer Ice Cream Co.,* 347 Pa. 346, 350, 32 A.2d 413 (1943); quoted in *McGee v. Feege,* 517 Pa. 247, 535 A.2d 1020, 1023 (1987). Also instructive is the following:

> Abuse of process focuses on the misuse of civil process, which is properly issued upon probable cause, to achieve some object other than the legitimate purpose for which it is designed, as opposed to the wrongful initiation of legal proceedings without probable cause.

*Denenberg v. American Family Corp. of Columbus, Ga.,* 566 F.Supp. 1242, 1249 (E.D.Pa.1983). We came to the same conclusion in *Zappala v. Hub Foods, Inc.,* 683 F.Supp. 127 (W.D.Pa.1988) (Cohill, C.J.).

Clearly plaintiffs' Complaint does not state a common law cause of action for malicious abuse of process. Plaintiffs complain of the initiation of an improper and unfounded suit, not the perversion of properly issued process. Whereas malicious abuse of process concerns the subsequent perversion of properly issued process, plaintiffs allege that defendants' acts were tainted ab initio. *See, Zappala,* 683 F.Supp. 127.

Count III is more properly categorized as a claim for malicious use of process, or malicious prosecution, under 42 Pa.C.S.A. § 8351. One prerequisite to such a claim is that the underlying litigation must have terminated in favor of the party against whom it was brought. In the present case, it appears that the civil RICO action is still pending. Therefore plaintiffs' statutory claim of malicious use of process is premature and must be dismissed without prejudice. *See, Zappala,* 683 F.Supp. 127.

### 5. *Emotional Distress*

In Count IV plaintiffs asserted claims for intentional infliction of emotional distress.

Plaintiffs have now acceded to dismissal of Count IV.

## CONCLUSION

We return then to our original analogy. By this Opinion we have better defined the tail of the elephant, but we still have little understanding of the true shape of the rest of the beast. In many ways the instant case may be dependent on the resolution of the other, prior litigation. For instance, the truth or falsity of the allegedly defamatory statements may be decided in the RICO case because they are essentially the same as the allegations of the RICO Complaint. As we have seen above, a malicious prosecution claim is dependent on resolution of the RICO claim. The RICO case in turn may be dependent on the validity of the liens, an issue apparently to be determined in Venango County Court of Common Pleas.

Whatever the scenario, one thing is clear—we are at the wrong end of the elephant to make any accurate judgment about the true nature of the beast. For this reason, and because the claims here are at least in part dependent on the outcome of the underlying litigation, we will require defendants to file Answers and we will stay the present action on our own motion until the prior underlying cases are resolved.

## ORDER

AND NOW, this 21st day of November, 1989, in accordance with the accompanying Opinion, it is hereby ORDERED:

1. The Default entered against Defendant Zucker on May 3, 1989 is vacated and set aside.

2. Plaintiffs shall make personal service of process on Defendant Zucker in accord with Fed.R.Civ.P. 4(c)(2)(C)(ii) within 20 days of this Order. Defendant Zucker shall file an Answer within 20 days of service.

3. Defendant Zucker shall pay the costs of personal service of process in accord with Fed.R.Civ. 4(c)(2)(D).

4. Defendants' Motions to Dismiss are DENIED as to Count I.

5. Count II is DISMISSED as to Defendants Glassman and Sachs only.

6. Counts III and IV are DISMISSED without prejudice as to all defendants.

7. Defendants Sachs & Glassman shall file Answers on or before November 30, 1989.

8. This action is STAYED until resolution of the prior underlying litigation described in the Opinion.

9. The Clerk is DIRECTED to mark this matter CLOSED. The action may be reopened by plaintiffs upon resolution of the prior underlying litigation.