Douglas M. CAMERON

v.

GRAPHIC MANAGEMENT ASSOCIATES, INC.

Civ. A. No. 92–2779.

United States District Court, E.D. Pennsylvania.

Sept. 21, 1992.

Ira S. Lefton, Reed, Smith, Shaw & McClay, Philadelphia, PA, for plaintiff.

Stephen J. Springer, La Brum and Doak, Philadelphia, PA, for defendant.

### MEMORANDUM

CAHN, District Judge.

Currently before this court is the plaintiff's Motion for Reconsideration of this court's Order of August 24, 1992. The plaintiff seeks to have this court reconsider its decision regarding his Motion to Dismiss the defendant's Abuse of Process Counterclaim and the Motion to Strike the defendant's Eighth Affirmative Defense. In accordance with Local R.Civ.P. 20(g), the plaintiff filed the Motion within ten days of this court's Order. For the reasons set forth herein, the plaintiff's Motion will be granted.

### BACKGROUND

This court accepts as true, for purposes of this motion, the following facts which the defendant has alleged. In February of 1987, the defendant, Graphic Management Associates, Inc. ["GMA"], employed the plaintiff, Douglas M. Cameron ["Cameron"], to implement and develop software systems. Defendant's Amended Answer, Affirmative Defenses and Counterclaim ["Counterclaim"] at ¶¶ 2–3. Prior to his employment with GMA, Cameron had developed a computer program called COLORCON. Counterclaim at ¶ 11. Pursuant to an agreement signed by the parties, Cameron agreed to transfer and assign to GMA all of the intellectual property he "made or conceived ... during his employment." Counterclaim at ¶ 8. Although the agreement required Cameron to list all of his prior copyrights, he failed to list the COLORCON software. Counterclaim at ¶ 10.

In July 1991, GMA transferred Cameron to a different position because his work performance was unsatisfactory. Counterclaim at ¶ 16. On July 22, 1991, after Cameron retaliated by installing a program designed to destroy GMA's computer system programs, GMA terminated Cameron. Counterclaim at ¶¶ 17–19. Subsequent to his termination, but before initiating this lawsuit, Cameron registered a copyright for the COLORCON software. Counterclaim at ¶¶ 21–22. Cameron then initiated this lawsuit against GMA for copyright infringement, misappropriation of trade secrets, and unjust enrichment on May 13, 1992. GMA's Abuse of Process Counterclaim followed.

### MOTION TO DISMISS

■ The plaintiff urges this court to dismiss the defendant's Abuse of Process Counterclaim pursuant to Fed.R.Civ.P. 12(b)(6). Under Fed.R.Civ.P. 12(b)(6), a party to a lawsuit may make a motion to dismiss for "failure to state a claim upon which relief can be granted[.]" It is well settled that a Motion to Dismiss will only be granted if the party against whom the motion was filed cannot prove a set of facts which support its claim. See Neitzke v. Williams, 490 U.S. 319, 326–27, 109 S.Ct. 1827, 1832, 104 L.Ed.2d 338 (1989); Conley v. Gibson, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957); Labov v. Lalley, 809 F.2d 220, 221–22 (3d Cir.1987). Moreover, the court must draw all reasonable inferences from the facts pleaded in the claim and construe them in a light most favorable to the claimant. See Unger v. National Residents Matching Program, 928 F.2d 1392, 1400 (3d

Cir.1991); *Markowitz v. Northeast Land Company*, 906 F.2d 100, 103 (3d Cir.1990); *Colburn v. Upper Darby Township*, 838 F.2d 663, 665–66 (3d Cir.1988).

■ An abuse of process claim is grounded in state law. In this particular dispute, the law of Pennsylvania governs. In *McGee v. Feege*, 517 Pa. 247, 535 A.2d 1020 (1987), the Supreme Court of Pennsylvania differentiated between the torts of abuse of process and malicious use of civil process. "Malicious use of civil process has to do with the wrongful *initiation* of such process, while abuse of civil process is concerned with a perversion of a process *after* it has been issued." *McGee*, 535 A.2d at 1023 (emphasis added) (citation omitted). The essence of an abuse of process claim is that proceedings are used for a purpose not intended by the law. *Rosen v. Tesoro Petroleum Corporation*, 399 Pa.Super. 226, 582 A.2d 27, 32 (1990), *appeal denied*, 527 Pa. 636, 592 A.2d 1303 (1991). Abuse of process usually pertains to situations involving "extortion by means of attachment, execution or garnishment, and blackmail by means of arrest or criminal prosecution." *Zappala v. Hub Foods, Inc.*, 683 F.Supp. 127, 129 (W.D.Pa.) (quoting W. Prosser & W. Keeton, *Prosser and Keeton on Torts* § 121 (5th ed. 1984)). Moreover, there is no cause of action for abuse of process if the claimant, even with bad intentions, merely carries out the process to its authorized conclusion. *Shaffer v. Stewart*, 326 Pa.Super. 135, 473 A.2d 1017, 1019 (1984) (citing *DiSante v. Russ Financial Co.*, 251 Pa.Super. 184, 380 A.2d 439, 441 (1977)). The touchstone of the tort is that, subsequent to the issuance of process, a party has perversely, coercively, or improperly used that process. *See Zappala*, 683 F.Supp. at 130; *Rosen*, 582 A.2d at 33.

■ In contrast to abuse of process, a malicious use of civil process claim specifically addresses situations where a party wrongfully initiates a suit against another. *See Muirhead v. Zucker*, 726 F.Supp. 613, 617 (W.D.Pa. 1989); *Zappala*, 683 F.Supp. at 129; *McGee*, 535 A.2d at 1023. Although malicious use of civil process was originally a common law action, it has subsequently been codified by the Pennsylvania Legislature. 42 Pa.Cons.Stat. §§ 8351–8354 (1980). A party suing under this statute must prove that "[t]he primary purpose for which the proceedings were brought was not that of securing the proper discovery, joinder of parties or adjudication of the claim on which the proceedings were based." 42 Pa.Cons.Stat. § 8354(4).

A review of GMA's briefs and pleadings suggests that its claim, although couched in terms of abuse of process, actually asserts facts that pertain to a wrongful use of civil proceedings claim. GMA states that in *"filing* this lawsuit, Cameron acted with ill will and a malicious purpose, [and is using this litigation] to further retaliate against GMA and to damage GMA's good reputation in the newspaper industry." Counterclaim at ¶¶ 23–24. GMA goes on to state that "this litigation and the instant Motion simply are part of a pattern being utilized by Plaintiff to harass, punish, and retaliate against GMA." Defendant's Memorandum of Law in Opposition to Plaintiffs Motion to Dismiss and to Strike Defenses ["GMA's brief in opposition"] at 10. GMA also states that an abuse of process claim exists because of Cameron's *"initiation* and *prosecution* of two baseless lawsuits," and Cameron's "very *commencement* of this litigation." Defendant's Memorandum of Law in Opposition to Plaintiff's Motion for Reconsideration of the Court's Order of August 24, 1992 at p. 4, 5. Assuming *arguendo* all of the defendant's allegations are true, the defendants have not properly pleaded an abuse of process claim. On the contrary, these allegations are really tantamount to an action for malicious use of process. *See McGee*, 535 A.2d at 1025.

In fact, GMA's allegations closely mirror those utilized by the defendants in the *Zappala* case. In *Zappala*, the defendants alleged in their abuse of process counterclaim that the plaintiff instituted the lawsuit "solely for the purpose of harassing defendants and diminishing their ability to continue actions against and/or involving plaintiffs in the Court of Common Pleas of Beaver County, Pennsylvania." *Zappala*, 683 F.Supp. at 130. Furthermore, the defendants stated that the "litigation [was] instituted for an improper purpose or ulterior motive[,] ... [and the

plaintiff intended] to drain further the [defendant's] financial resources, shift the focus of its attorneys away from the state court action ... and serve as a bargaining chip during conciliation efforts at the state court level." *Id.* The court concluded that the abuse of process claim was improper because the defendants did not aver that the plaintiff abused the process, subsequent to its issuance, for unintended purposes. *Id.*

This court finds that GMA, like the defendants in *Zappala,* has improperly characterized its counterclaim. The core of GMA's argument is that GMA has improperly initiated this lawsuit. Noticeably absent from the defendant's documents is any allegation that Cameron has abused the process *after* its issuance. Without such allegations an abuse of process claim cannot stand. Even if the plaintiff's motive for initiating this lawsuit is not laudable, it nevertheless does not give rise to a claim of abuse of process. When a lawsuit is initiated for vexatious and retaliatory purposes, the tort which is implicated is a wrongful use of civil proceedings. Accordingly, the defendant's abuse of process counterclaim is dismissed.

### MOTION TO STRIKE

The Motion for Reconsideration filed by the plaintiff also urges this court to Strike the defendant's Eighth Affirmative Defense. The Eighth Affirmative Defense as set forth in Defendant's Amended Answer, Affirmative Defenses and·Counterclaim at 8, is that the "[p]laintiff failed to timely register its COLORCON computer program and, therefore, plaintiff's copyright is invalid."

■ Motions to strike are governed by Fed.R.Civ.P. 12(f). In pertinent part Rule 12(f) provides that "Upon motion made by a party ... the court may order stricken from any pleading any insufficient defense." A motion to strike is generally disfavored. *See U.S. v. Kramer,* 757 F.Supp. 397, 409 (D.N.J. 1991). Indeed, "[A] court should not grant a motion to strike a defense unless the insufficiency of the defense is 'clearly apparent.'" *J & A Realty v. City of Asbury Park,* 763 F.Supp. 85, 87. (D.N.J. 1991) (citation omitted). Nevertheless, the court may grant a motion to strike a legally insufficient defense

so the parties to the suit do not needlessly waste time and money in preparation of trial. *See United States v. Marisol, Inc.,* 725 F.Supp. 833, 836 (M.D.Pa. 1989); 2a James W. Moore *et al., Moore's Federal Practice* ¶ 12.21(3) (2d ed. 1991).

Since the gravamen of GMA's defense is that Cameron's copyright is invalid because Cameron failed to register in a timely fashion, the starting point of the analysis is when copyrightable material can be registered. The first sentence of 17 U.S.C. § 408(a), states "At any time during the subsistence of copyright in any published or unpublished work, the owner of copyright or of any exclusive right in the work may obtain registration of the copyright claim by delivering to the Copyright Office the deposit specified by this section, together with the application and fee specified by sections 409 and 708." The plain language of § 408(a) enables a person to register copyrightable material at *any* time during the period of copyright protection. Under 17 U.S.C. § 302(a) copyright protection subsists for "the life of the author and fifty years after the author's death." Since Cameron is still alive, it follows therefore that Cameron registered his software in a timely fashion.

■ Having legitimately obtained a certificate of registration, Cameron subsequently filed a copyright infringement action against GMA. Thus, the next issue becomes whether the certificate of registration was obtained at such a late date that Cameron is precluded from proceeding with this lawsuit. 17 U.S.C. § 411(a) provides that "no infringement of the copyright in any work shall be instituted until registration of the copyright claim has been made in accordance with this title." There are exceptions to this rule which are set forth in 17 U.S.C. § 411(b), however, they are not applicable to this case. Generally, courts construing § 411(a) have found that so long as. the copyright was registered prior to the filing of the lawsuit, the court has jurisdiction to hear the claim. *See Haan Crafts Corp. v. Craft Masters,* 683 F.Supp. 1234, 1242 (N.D.Ind. 1988); *Quincy Cable Systems, Inc. v. Sully's Bar,* 650 F.Supp. 838, 850–51 (D.Mass. 1986). Since Cameron actu-

ally registered his material before he brought this lawsuit, he has not violated § 411(a).

GMA's position is that in spite of 17 U.S.C. §§ 408(a), 411(a), Cameron's copyright is invalid because Cameron did not obtain registration within five years of the date of first publication. To support this contention, GMA looks to 17 U.S.C. § 410(c). 17 U.S.C. § 410(c) states: "In any judicial proceedings the certificate of a registration made before or within five years after first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate. The evidentiary weight to be accorded the certificate of registration made thereafter shall be within the discretion of the court." GMA's reliance on 17 U.S.C. § 410(c) is wholly misplaced.

17 U.S.C. § 410(c) does not pertain to the validity of the copyright. Instead, it deals with the evidentiary weight to be given to the certificate of registration in a copyright case. In a copyright infringement action, as in any other civil action, the burden of proof is on the plaintiff to establish its prima facie case. Thus, Cameron must establish that (1) he has valid copyright protection and (2) GMA has infringed on this protection. *See Masquerade Novelty, Inc. v. Unique Industries, Inc.*, 912 F.2d 663, 667 (3d Cir.1990) (quoting *Whimsicality, Inc. v. Rubie's Costume Co., Inc.*, 891 F.2d 452, 455 (2d Cir.1989)). § 410(c) is relevant to the first prong of the copyright infringement test to the extent that it allocates the burden of proof. *See* 3 M Nimmer & D. Nimmer, *Nimmer on Copyright* § 12.11[A–B], pp. 12–146—12–148.2 (1992). It merely states that if Cameron had registered his software with the Copyright Office within five years of its first publication, a rebuttable presumption would exist that Cameron's copyright is valid. Since the presumption would be rebuttable, the burden of proof would shift to GMA to prove that the plaintiff's copyrights are invalid. *See Masquerade Novelty*, 912 F.2d at 668.

On the other hand, failure to obtain registration within five years would not render Cameron's copyright invalid. Rather, § 410(c) simply says that Cameron would not be automatically entitled to the prima facie presumption of copyright validity. It should be noted that even though the registration certificate is dated more than five years after the date of first publication, this court under Section 410(c) could nevertheless give it the weight of prima facie evidence. *See Telerate Systems, Inc. v. Caro*, 689 F.Supp. 221, 227 n. 7 (S.D.N.Y. 1988). If this court opted not to give any evidentiary weight to the certificate of registration because the certificate was obtained more than five years after the date of first publication, then the burden would be on Cameron to establish that the copyright is valid. Whether or not Cameron could actually meet that burden is an issue that this court need not decide.

■ In sum, 17 U.S.C. § 410(c) deals with the allocation of the burden of proof in a copyright infringement claim. It does not render a copyright invalid because a party failed to register its copyrightable material within five years. This court has been unable to find any case law which supports GMA's interpretation of § 410(c). Indeed, neither GMA's Memorandum of Law in Opposition to Plaintiff's Motion for Reconsideration nor its original Memorandum of Law in Opposition to Plaintiff's Motion to Strike Defenses cites a single case which supports its position. Accordingly, GMA's Eighth Affirmative Defense is legally insufficient, and thus will be stricken.

## CONCLUSION

For the foregoing reasons, the plaintiff's Motion for Reconsideration will be granted.