NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 17-1884
_____

DONNA TURKOS,
Appellant

v.

DUPONT BOROUGH;
JASON KWIATKOWSKI;
JOHN SARANCHUK

_____

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA
(No. 3-14-cv-02243)
District Judge: Hon. James M. Munley
_____

Submitted Under Third Circuit L.A.R. 34.1(a)
October 23, 2017
_____

Before: GREENAWAY, JR., NYGAARD, and FISHER, *Circuit Judges*.

(Opinion Filed: January 9, 2018)
_____

OPINION*
_____

GREENAWAY, JR., *Circuit Judge*.

---

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

In this case involving claims of First Amendment retaliation brought under 42 U.S.C. § 1983 and state law claims of malicious prosecution and abuse of power, Donna Turkos appeals from the District Court's order granting summary judgment on all counts in favor of Appellees Dupont Borough, Jason Kwiatkowski, and John Saranchuk. Because we agree with the District Court that probable cause existed to file criminal charges against Turkos, and that Turkos failed to present evidence showing a perversion of the prosecutorial process after its initiation, we will affirm.

## I. BACKGROUND

On May 17, 2013 Donna Turkos spoke on the phone with Dupont Borough Police Officer Jason Kwiatkowski. During that phone call, Turkos alleged that her ex-husband, David Turkos, a former Dupont Borough Police Officer himself, had been harassing her and her children. She contacted Kwiatkowski seeking enforcement of a Protection from Abuse Order ("PFA"). Donna had previously obtained two PFAs against David: one in 2008, and another in 2011. The 2011 PFA had expired in 2012, but Donna stated to Kwiatkowski that the 2008 order had been extended and remained in effect.

A month later, however, no PFA had been enforced against David Turkos. Instead, Kwiatkowski had charged Donna Turkos with three crimes: 1) Tampering with public records or information, in violation of 18 Pa. Cons. Stat. § 4911(a)(2); 2) False reports to law enforcement authorities, in violation of 18 Pa. Cons. Stat. § 4906(a); and 3)

2

Unsworn falsification to authorities, in violation of 18 Pa. Const. Stat. § 4904(a)(1).[1]

In an Affidavit of Probable Cause submitted in support of the charges, Kwiatkowski averred that, after speaking with Donna Turkos on the phone on May 17, he met with her in person at the Dupont Police Department that afternoon. During their meeting, she provided a court document showing that her 2008 PFA remained active through June 7, 2014. Kwiatkowski also took a written statement from Turkos about her ex-husband's alleged harassment.

The Affidavit further stated that, after Turkos left, Kwiatkowski called the Luzerne County 911 Center to check the status of her PFA. The Center's policy is to check the statewide registry of protection orders, which the Pennsylvania State Police is required by law to maintain and make available to law enforcement throughout Pennsylvania. 23 Pa. Cons. Stat. § 6105(e). When Kwiatkowski called, the Center informed him that no PFA was currently in effect against David Turkos. Dupont Borough Police Officer Charles Yarick then called the Luzerne County Sheriff's Department to check the status of the PFA. The Sheriff's Department similarly responded that there were no records of an active PFA.

According to Kwiatkowski's Affidavit, Dupont Borough Police Sergeant John Saranchuk spoke with David Turkos at the Dupont police station a few days later. At that meeting, David provided Saranchuk with court documents that showed there was no

---

[1] The approval of the Luzerne County District Attorney's Office was not required for any of the charges Kwiatkwoski initiated.

3

active PFA against him. Saranchuk then repeated the steps Kwiatkowski and Yarick had taken on May 17: he contacted both the Luzerne County 911 Center and the Luzerne County Sheriff's Department. Both again confirmed that no PFA was in effect.

In a later deposition, Kwiatkowski stated that he also obtained records from the Luzerne County Prothonotary's Office and the Luzerne County PFA Office as part of his investigation. The PFA Office provided an order indicating that the 2008 PFA had been extended to June 7, 2014. But based on additional documents obtained from the Prothonotary, Kwiatkowski determined that the order extending the PFA had subsequently been vacated, and that the PFA had expired.

After filing the charges against Donna Turkos, however, Kwiatkowski met with Jenny Roberts from the Luzerne County District Attorney's Office, who informed him that she had learned from the PFA Office that a PFA was currently in effect. In response, Kwiatkowski provided Roberts with the documents he had obtained from the Prothonotary, which she agreed showed that there in fact was no currently active PFA. Roberts explained, though, that the conflicting evidence would make it difficult to show that Turkos had intentionally committed the crimes with which she had been charged. And indeed, following a preliminary hearing, the Magisterial District Court in Luzerne Country dismissed all charges, finding there was insufficient evidence to proceed.

Turkos then filed this lawsuit, alleging that the charges were brought in retaliation for her making accusations against her ex-husband, a former Dupont Borough Police Officer. Her amended complaint asserts four claims: 1) First Amendment retaliation

4

against Saranchuk and Kwiatkowski, under 42 U.S.C. § 1983; 2) Pennsylvania common law malicious prosecution against Saranchuk and Kwiatkowski; 3) First Amendment retaliation against the Dupont Borough, under 42 U.S.C. § 1983; and 4) Pennsylvania common law abuse of process, against Saranchuk and Kwiatkowski.

Following discovery, Turkos moved for partial summary judgment with respect to the First Amendment retaliation and malicious prosecution claims against Kwiatkowski only. Kwiatkowski, Saranchuk, and Dupont Borough, meanwhile, filed motions for summary judgment on all counts. The District Court subsequently denied Turkos's motion, granted the three Defendants' motions, and entered judgment in favor of the Defendants. Turkos now appeals that decision.

## II. JURISDICTION & STANDARD OF REVIEW

The District Court had jurisdiction over Turkos's § 1983 claims under 28 U.S.C. § 1331 and her state law claims pursuant to 28 U.S.C. § 1367. We have jurisdiction under 28 U.S.C. § 1291 to review the final decision of the District Court with respect to all claims.

We exercise plenary review of a district court's grant of summary judgment. *Goldenstein v. Repossessors Inc.*, 815 F.3d 142, 146 (3d Cir. 2016). We will affirm "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[2] During our review, we

_____

[2] The District Court cited an outdated version of Rule 56, under which summary judgment was appropriate "if the pleadings, depositions, answers to interrogatories, and

view "the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor." *Burns v. Pa. Dep't of Corr.*, 642 F.3d 163, 170 (3d Cir. 2011) (quoting *Armbruster v. Unisys Corp.*, 32 F.3d 768, 777 (3d Cir. 1994)). However, the nonmoving party cannot avoid summary judgment by presenting nothing more than "[u]nsupported assertions, conclusory allegations, or mere suspicions." *Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 252 (3d Cir. 2010).

## III. DISCUSSION

Turkos argues that the District Court erred in granting summary judgment against her on all four claims in her amended complaint. We will address each claim in turn.

### A. Count One: First Amendment Retaliation against Saranchuk and Kwiatkowski

To prevail on a claim of First Amendment retaliation, a plaintiff must show "(1) constitutionally protected conduct, (2) retaliatory action sufficient to deter a person of ordinary firmness from exercising his constitutional rights, and (3) a causal link between the constitutionally protected conduct and the retaliatory action." *Thomas v. Independence Twp.*, 463 F.3d 285, 296 (3d Cir. 2006). For a claim of retaliatory prosecution, the plaintiff must prove a fourth element as well: the absence of probable cause for the underlying criminal charges. *Hartman v. Moore*, 547 U.S. 250, 265–66 (2006); *see also Miller v. Mitchell*, 598 F.3d 139, 154 (3d Cir. 2010) (plaintiffs must

---

admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." App. 3; Fed R. Civ. P. 56(c) (amended 2007). This error, however, does not impact the outcome in this case.

6

show absence of probable cause even in cases where the same individual acted as both investigator and prosecutor).

Probable cause exists if there is a "fair probability" that the person committed the crime at issue. *Dempsey v. Bucknell Univ.*, 834 F.3d 457, 467 (3d Cir. 2016). Put differently, probable cause is present "when the facts and circumstances within the arresting officer's knowledge are sufficient in themselves to warrant a reasonable person to believe that an offense has been or is being committed by the person to be arrested." *Orsatti v. N.J. State Police*, 71 F.3d 480, 483 (3d Cir. 1995). Importantly, "the standard does not require that officers correctly resolve conflicting evidence or that their determinations of credibility . . . were, in retrospect, accurate." *Wright v. City of Phila.*, 409 F.3d 595, 603 (3d Cir. 2005). Thus, probable cause is "[f]ar from demanding proof of guilt beyond a reasonable doubt." *Dempsey*, 834 F.3d at 467.

In § 1983 cases, probable cause is generally a question left for the jury, but courts may conclude that probable cause existed as a matter of law if "the evidence, viewed most favorably to [the nonmoving party], reasonably would not support a contrary factual finding." *Id.* (alteration in original) (quoting *Sherwood v. Mulvihill*, 113 F.3d 396, 401 (3d Cir. 1997)).

This is a case where probable cause existed as a matter of law. The Dupont Police collected substantial evidence indicating that no PFA was in effect. Kwiatkowski's Affidavit of Probable Cause makes clear that he and Saranchuk each used the Luzerne County 911 Center to check the status of Turkos's PFA with the Pennsylvania statewide

7

registry, which is the Dupont Police's authoritative source for such information. Both times, the Center reported that the registry indicated no records of an active PFA against David Turkos. The Luzerne County Sheriff's Office twice confirmed that there was no active PFA. Saranchuk also met with David Turkos, who produced court documents showing there was no PFA currently in effect against him. And Kwiatkowski later testified that he obtained additional documents from the Prothonotary's office, which he understood to show that the PFA had expired.

Only two documents contradicted all of this evidence indicating that there was no PFA in effect: one provided by Donna Turkos, and another by the PFA Office. But Kwiatkowski determined that the other evidence, collected from what he believed to be more credible sources, showed those documents were invalid.

These facts that were within Kwiatkowski and Saranchuk's knowledge were sufficient to lead a reasonable person to believe that Donna Turkos had committed the crimes at issue when she presented Kwiatkowski with invalid PFA documentation and sought enforcement of what was, as best as Kwiatkowski and Saranchuk could tell, an expired PFA. Indeed, armed with the same information, a reasonable person could have concluded that Turkos had tampered with public records in violation of Pennsylvania law by "mak[ing], present[ing] or us[ing] [a] record, document or thing knowing it to be false," 18 Pa. Cons. Stat. § 4911(a)(2). Similarly, one could have concluded that Turkos had made false reports to law enforcement authorities by "knowingly giv[ing] false information to [a] law enforcement officer with intent to implicate another," *Id.*

8

§ 4906(a). And one could have determined that Turkos had committed an unsworn falsification to authorities by making a "written false statement which [s]he d[id] not believe to be true," *Id.* § 4904(a)(1).

In arguing that summary judgment is inappropriate, Turkos makes a significant effort to prove that the 2008 PFA was in fact in effect when she made her statement to Kwiatkowski. This effort, while compelling, misses the point. The focus of the probable cause inquiry is the information available to Kwiatkowski and Saranchuk at the time the charges were filed, not whether, in retrospect, the PFA was actually valid in May 2013. Thus, although Turkos may establish disputes of fact regarding whether the PFA remained in effect, those factual issues are not material to the question of whether probable cause existed.[3]

Turkos also stresses that, when the charges were initiated, Kwiatkowski possessed documents that indicated the PFA remained active. This argument does get at the crux of the issue. However, the mere existence of conflicting evidence does not preclude a finding of probable cause on summary judgment. *See, e.g.*, *Dempsey*, 834 F.3d at 468 ("[T]he probable cause standard by definition allows for the existence of conflicting, even irreconcilable, evidence," and "the summary judgment standard must tolerate conflicting evidence to the extent it is permitted by the probable cause standard.").

---

[3] The facts surrounding whether the 2008 PFA remained in effect in May 2013 are extensive. For the reasons explained above, however, we need not answer that question to determine whether probable cause existed, and we therefore decline to do so.

Moreover, we need not conclude that the ultimate decision to prosecute was prudent under the circumstances in order to find that probable cause existed. Here, the conflicting evidence that Turkos identifies simply is not of sufficient weight to make Kwiatkowski's decision to charge unreasonable. Kwiatkowski determined, based on all of the evidence before him, that the PFA had originally been extended to June 7, 2014, but that the extension order had subsequently been vacated, and that the PFA had expired. Regardless of whether the determination was in the end correct, it was reasonable in light of Kwiatkowski's knowledge at the time. *See Wright*, 409 F.3d at 603 ("Although [the police officers] may have made a mistake, their belief was not unreasonable in light of the information the officers possessed at the time.").

Turkos has not presented evidence that credibly casts doubt on the truthfulness of the facts stated in Kwiatkowski's Affidavit of Probable Cause.[4] And she has not produced sufficient conflicting evidence to call into question the reasonableness of the charging decision based on the information within Kwiatkowski's and Saranchuk's knowledge at the time the decision was made. Accordingly, with regard to probable cause, Turkos has failed to establish a genuine dispute as to any material fact. Summary judgment in favor of Kwiatkowski and Saranchuk is therefore appropriate on Count

---

[4] Turkos asserts that Kwiatkowski lied in his Affidavit of Probable Cause, but this conclusory allegation is not supported by evidence and is thus insufficient to avoid summary judgment. *See, e.g.*, *Betts*, 621 F.3d at 252.

One.[5]

## B. Count Two: Malicious Prosecution against Kwiatkowski and Saranchuk

Like claims of First Amendment retaliatory prosecution, claims of malicious

prosecution under Pennsylvania law require plaintiffs to prove an absence of probable

cause for the underlying criminal charges. *Kelley v. Gen. Teamsters, Cheauffers and*

*Helpers, Local Union 249*, 544 A.2d 940, 941 (Pa. 1988).[6]  As explained above, probable

cause existed in this case as a matter of law.  Kwiatkowski and Saranchuk are thus

entitled to summary judgment on Count Two.

## C. Count Three: First Amendment Retaliation against Dupont Borough

In determining whether a municipality can be held liable under § 1983, courts

---

[5] Turkos stresses that she has offered evidence regarding Kwiatkowski and Saranchuk's alleged motive to retaliate against her.  However, "action colored by some degree of bad motive does not amount to a constitutional tort if that action would have been taken anyway."  *Hartman*, 547 U.S. at 260.  Plaintiffs bringing First Amendment retaliatory prosecution claims must therefore also show the absence of probable cause. *See id.* at 265; *Miller*, 598 F.3d at 154.

Furthermore, to the extent that our precedent permits particularly strong evidence of retaliatory motive to negate the existence of probable cause in cases where the same government official acts as both the investigator and prosecutor, the evidence Turkos offers here is insufficient.  Importantly, it is undisputed that Kwiatkowski, the person who ultimately made the decision to charge, did not become a Dupont Borough Police Officer until after David Turkos's departure from the Department.  It is similarly undisputed that Kwiatkowski had never met David Turkos at the time he initiated the charges.  Taking into account these facts, as well as the fact that probable cause existed, Turkos is unable to show a causal link between her constitutionally protected conduct and the alleged retaliatory action taken against her.

[6] For a plaintiff to prevail on a claim of malicious prosecution in Pennsylvania, the "defendant must have instituted proceedings against the plaintiff 1) without probable cause, 2) with malice, and 3) the proceedings must have terminated in favor of the plaintiff."  *Kelley*, 544 A.2d at 941.

11

must ask "(1) whether [the] plaintiff's harm was caused by a constitutional violation, and if so, (2) whether the city is responsible for that violation." *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1149–50 (3d Cir. 1995) (quoting *Collins v. City of Harker Heights*, 503 U.S. 115, 120 (1992)). As we explained above, no constitutional violation took place in this case because probable cause existed to initiate the charges against Turkos. Accordingly, it necessarily follows that Dupont Borough cannot be held liable under § 1983. The District Court was correct to enter judgment in Dupont's favor on Count Three.

**D. Count Four: Abuse of Process against Kwiatkowski and Saranchuk**

Under Pennsylvania law, the elements of an abuse of process claim are "(1) an abuse or perversion of process already initiated (2) with some unlawful or ulterior purpose, and (3) harm to the plaintiff as a result." *Williams v. Fedor*, 69 F. Supp. 2d 649, 668 (M.D. Pa. 1999) (quoting *T.B. Proprietary Corp. v. Sposato Builders, Inc.*, No. Civ. A. 94-6745, 1996 WL 674016, at *3 (E.D. Pa. Nov. 20, 1996)). Importantly, then, abuse of process "is concerned with a perversion of process *after* it is issued." *McGee v. Feege*, 535 A.2d 1020, 1023 (Pa. 1987) (emphasis added) (quoting *Publix Drug Co. v. Breyer Ice Cream Co.*, 32 A.2d 413, 415 (Pa. 1943)). "Moreover, there is no cause of action for abuse of process if the [government officer], even with bad intentions, merely carries out the process to its authorized conclusion." *Cameron v. Graphic Mgmt. Assocs., Inc.*, 817 F. Supp. 19, 21 (E.D. Pa. 1992).

Here, Turkos has not presented any evidence that Kwiatkowski or Saranchuk

12

abused the charging process after it was initiated. She does not allege, for example, that they attempted to blackmail or extort her by means of criminal prosecution. Nor does she accuse the officers of otherwise misusing the prosecutorial process after the charges were filed. Instead, viewing the evidence in the light most favorable to Turkos, Kwiatkowski and Saranchuk simply carried out the process to its authorized conclusion, when the Magisterial District Court decided to dismiss the charges. Kwiatkowski and Saranchuk are thus entitled to summary judgment on Count Four.

## IV. CONCLUSION

For the reasons set forth above, we will affirm the District Court's order granting summary judgment in favor of Kwiatkowski, Saranchuk, and Dupont Borough.